UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GEOFFREY CROWTHER,
            Plaintiff,

vs.

CONSOLIDATED RAIL CORPORATION
and CSX TRANSPORTATION, INC.,
            Defendants.

CIVIL ACTION NO.:  05-30140-MAP

**DEFENDANTS, CONSOLIDATED RAIL CORPORATION AND CSX
TRANSPORTATION, INC.'S, MEMORANDUM OF LAW IN SUPPORT OF THEIR
EMERGENCY MOTION TO DISMISS THE PLAINTIFF'S CARPAL TUNNEL CLAIM,
OR, IN THE ALTERNATIVE, MOTION TO EXCLUDE THE PLAINTIFF'S EXPERTS,
AND MOTION TO COMPEL DISCOVERY AND TO EXTEND THE DEFENDANTS'
DEADLINE TO COMPLETE DISCOVERY**

The defendants, Consolidated Rail Corporation ("Conrail") and CSX Transportation, Inc.

("CSX"), pursuant to Fed. R. Civ. P. 37, hereby respectfully request that the plaintiff, Geoffrey

Crowther's, occupational carpal tunnel claims against them be dismissed for failure to timely

identify and produce documents and failure to properly disclose his expert witnesses.  In the

alternative, the defendants request that the plaintiff be compelled to produce copies of his

medical records and bills, adequate responses to the defendants' discovery request, and that he

produce the information mandated by Fed. R. Civ. P. Rule 26(a)(2)(B).  Moreover, the

defendants request that the plaintiff be sanctioned for his failure to cooperate, which has severely

prejudiced the defendants.  Finally, despite the Court's instruction that it would grant no further

deadlines, the plaintiff respectfully request that, given the circumstances, they be allowed

additional time to complete discovery in this matter.

# I.     DISCUSSION

**A. The Plaintiff's Carpal Tunnel Claim Should Be Dismissed For Failure To Timely Produce Evidence In Support Of His Claim And For Failure To Disclose And Produce The Plaintiff's Medical Records:**

On or about June 16, 2005, three days before the expiration of the statute of limitations, the plaintiff filed claims against the defendants, Conrail and CSX, alleging that he suffered occupational-induced hearing loss and occupational-induced bilateral carpal tunnel syndrome. The plaintiff alleged that his carpal tunnel syndrome was diagnosed on June 19, 2002. Thereafter, the plaintiff produced his *Initial Disclosures* dated November 3, 2005, which related only to the plaintiff's claim for occupationally induced hearing loss, which is attached hereto as Exhibit "A."  In fact, the only documents which were produced by the plaintiff were copies of medical records from UMass Center for Learning, Speech and Hearing, relating to the plaintiff's alleged hearing loss. *See* Exh. A.  As this disclosure made no reference whatsoever to the plaintiff's additional claim for carpal tunnel syndrome, on November 8, 2005, counsel for the defendants requested additional disclosures and documents which relate to the plaintiff's claims for carpal tunnel syndrome.  *See* copy of correspondence dated November 8, 2005, which is attached hereto as Exhibit "B."  The defendants received no response to this request, and the plaintiff's *Initial Disclosures* have never been supplemented.

Thereafter, on or about November 30, 2005, the defendants served the plaintiff with their *First Set of Interrogatories* and *First Set of Requests for Production of Documents*.  Despite repeated requests, both by telephone and by letter, the plaintiff did not respond to these discovery requests until June 27, 2006, and those responses were incomplete, evasive and

inadequate at best.[1] *See* copy of the *Defendants' First Request for Production of Documents* dated November 30, 32005 and the *Plaintiffs' Responses to Requests for Production of Documents* dated June 27, 2006, which are attached hereto as Exhibit "C;" *see also* copy of the *Defendants' First Set of Interrogatories* dated November 30, 2005 and the *Plaintiff's Answer to Interrogatories* dated June 27, 2006, which are attached hereto as Exhibit "D."

Thereafter, on May 15, 2006, defendants' counsel sent plaintiff's counsel a notice of the plaintiff's deposition and inquired as the status of the plaintiff's responses to their discovery requests. *See* letter dated May 15, 2006, attached hereto as Exhibit "E." The defendants, once again, received no response to their request. On June 26, 2006, counsel for the defendants' office contacted counsel for the plaintiff's office stating that the plaintiff's deposition would have to be postponed, as the defendants still had not received the plaintiff's discovery responses, and again requested that the plaintiff produce the same. The plaintiff's counsel sent, in response, a letter dated June 26, 2006, enclosing "copies of the plaintiff's medical records/reports in our possession regarding plaintiff's claims." *See* correspondence dated June 26, 2006, attached hereto as Exhibit "F." The only record which was produced, and the only record apparently in the plaintiff's possession, was the "electrodiagnostic report" of Mark A. Woodward, M.D. dated June 19, 2002. *See* Exh. F. This was the first time that the defendants learned of the plaintiff's treatment with Dr. Woodward.

---

[1] In the meantime, on May 2, 2006, the plaintiff produced signed authorizations which were sent to the plaintiff along with the defendants' *Interrogatories* on November 30, 2005, for the following medical providers: (1) Holyoke Hospital; (2) Holyoke Occupational Health; (3) Berkshire Occupational Health; (4) Berkshire Medical Group; (5) Berkshire Health Systems; (6) UMass Center for Learning, Speech and Language; and (6) UMass Medical Center. The defendants had learned of the plaintiff's treatment with these various medical providers by reviewing his Conrail/CSX medical files, with the exception of UMass Center for Learning, Speech and Language – the plaintiff had not disclosed any of these additional medical providers in his *Initial Disclosures*. Moreover, none of these records pertained to the plaintiff's alleged carpal tunnel syndrome. The defendants obtained these records pursuant to the authorizations and sent copies of each set of records to the plaintiff.

Finally, the plaintiff then produced his *Answers to Interrogatories* dated June 27, 2006 and *Responses to Requests for Production of Documents* dated June 27, 2006 via facsimile transmission on June 27, 2006.[2]  *See* Exhs. C and D.  The responses were incomplete and evasive; in fact, the plaintiff did not produce one single document in response to the defendants' requests.  Instead, the plaintiff either stated the he could not recall the information requested or that he would supplement the responses with his medical records and bills and copies of the tax returns; however, despite repeated requests, the defendants have not received any of these documents.

Perhaps even more disturbing is the fact that the plaintiff disclosed, for the first time, that he had treated with no less than three additional doctors, namely, "Dr. Baustin of Hadley," a hand specialist the plaintiff was referred to, who he believes is named Dr. Roman, and Dr. Steven Wenner, who may have diagnosed the plaintiff with upper extremity injuries, based on the plaintiff's answers.  None the records of these physicians were produced with the plaintiff's discovery responses, nor have any been produced to date.  Moreover, the defendants immediately sent the plaintiff's counsel authorizations for each of these providers[3] upon receipt of the defendants' responses, as well as an authorization for Dr. Woodward.  Again, despite repeated requests, both by phone and letter, these authorizations have never been produced.

Finally, in an effort to mitigate the damage caused by the plaintiff's late disclosure of treating physicians (and newly asserted medical conditions), the defendants served subpoenas

---

[2] The plaintiff also produced the documents by mail.

[3] The defendants searched the Massachusetts Board of Registration in Medicine for the full name of Dr. Roman. There is a Dr. Roman who is an orthopedic surgeon in Chelmsford, MA, and it is the defendants' guess that this is the "Dr. Roman" the plaintiff treated.  However, despite requests, the plaintiff has provided no additional

and notices of depositions upon these providers.  In a further effort to obtain these records from

the plaintiff, defendants' counsel contacted plaintiff's counsel's office on June 24, 2006 and was

assured that the matter would be looked into and that the defendants' counsel would receive a

call shortly to update the status of the authorizations.  Defendants' counsel, after receiving no

phone call, again called the office of plaintiff's counsel on August 1, 2006 and was informed that

the plaintiff had <u>none</u> of the records of Drs. Baustin, Wenner and/or Roman in their possession,

custody or control and had not received the signed authorizations from the plaintiff; although

they did consent to the production of the records via subpoena.  It is incomprehensible that the

plaintiff could file a claim for occupational carpal tunnel syndrome on June 5, 2005, and as of

August 1, 2006 still not have the medical records of the plaintiff's treating physicians.

Not only have the defendants been continually burdened by chasing the plaintiff to

produce documents that should have been produced long ago in this case, and least along with

the plaintiff's discovery responses (served 7 months after the initial requests were served), but

they still do not have possession of these vital records.  Without these records, the defendants

cannot proceed with the plaintiff's deposition, as the defendants cannot properly examine the

plaintiff without understanding what injuries the plaintiff is claiming to have suffered, its experts

cannot prepare their reports, no IME can be scheduled, and the defendants are forced to expend

additional funds in obtaining the records.  Further, the defendants have been unable to contact

Dr. Woodward's office at all, and despite the subpoenas served on Dr. Wenner's office and

UMass Center for Learning, Speech and Hearing, will not produce the plaintiff's medical records

---

information concerning "Dr. Roman."

without his specific, signed authorization.[4]

As the plaintiff disclosed the facts of his alleged occupational carpal tunnel syndrome, albeit scant, for the first time on June 26, 2006 (only two (2) months prior to the expiration of the discovery deadline), and has not provided any additional information in support of this claim, specifically the medical records for Drs. Wenner, Baustin and/or Roman, and because the defendants have been severely prejudiced by this late and lacking disclosure, the plaintiff's carpal tunnel claim should be dismissed. Not only have the defendants expended significant time and funds attempting to mitigate the damage caused by the plaintiff, but they have also been significantly disadvantaged in preparing a proper defense, including retaining their experts and deposing the plaintiff.

In the alternative, the defendants' request that the Court compel the plaintiff to produce the medical records and bills, as well as more complete responses to the defendants' discovery requests, as well as allow the defendants an additional ninety (90) days to complete their discovery, to commence upon receipt of the medical records and bills. Finally, the defendants request that the plaintiff be sanctioned pursuant to Rule 37, and that the defendants be awarded their costs in association with the preparation of this *Motion*.

### B. The Plaintiff's Carpal Tunnel Claim Should Be Dismissed For Failure To Properly Identify Any Experts In Support Of His Claim:

In his *Complaint*, the plaintiff alleges that he suffered bilateral carpal tunnel syndrome as a result of repetitive trauma associated with his work activities while employed by the defendants, Conrail and CSX. The plaintiff claims that he was "exposed to occupational risk

---

[4] Additionally, the defendants did not serve a subpoena on "Dr. Roman," as they still do not have any information about him, and the defendants' letter of August 2, 2006 requesting the same has, once again, gone unanswered.

factors for carpal tunnel syndrome, including but not limited to, repetition, force, vibration and awkward wrist position." *See Complaint* at ¶ 21. However, the plaintiff has failed to adequately disclose any expert to prove causation or damages in this matter.

In cases such as this, involving complex medical and liability issues, where the causal connection is not obvious to a layman, "such as a broken leg from being struck by an automobile," expert testimony is required. Schmaltz v. Norfolk & Western Ry., 896 F. Supp. 180 (N.D.Ill. 1995) *quoting* Moody v. Maine Central Railroad Co., 823 F. 2d 693, 695 (1st Cir. 1987); *see also* Claar v. Burlington Northern Railroad Co., 29 F.3d 499, 503 (9th Cir. 1994) ("where special expertise is necessary to draw a causal inference, expert testimony is necessary."); 4 F. Harper, F. James, O. Gray, The Law of Torts, 269. Expert testimony is also necessary to prove that the defendant's ergonomic program was inadequate, that the plaintiff's tools were defective and that these deficiencies somehow caused the plaintiff's alleged bilateral carpal tunnel syndrome.

In order to recover in this case, the plaintiff must present some evidence that his alleged bilateral carpal tunnel syndrome was caused by the defendants' negligence. As expert testimony is required on the issue of causation, any lay witness called to testify in this case, including the plaintiff, must be precluded from testifying about the cause of the plaintiff's injuries or about any other issues which would normally require expert testimony (such as the condition of the plaintiff's tools and the defendant's "ergonomic" program).

The deadline for the plaintiff to disclose his experts per the *Revised Scheduling Order* dated May 4, 2006 was August 2, 2006. Specifically, the *Order* provided that the "plaintiff shall

designate and <u>disclose information regarding his trial experts as required by Fed. R. Civ. P.</u>

<u>26(a)(2)</u> by August 2, 2006, and depositions of those experts shall be completed by September 1,

2006." (Emphasis Supplied). Rule 26(a)(2)(b) specifically provides:

> Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or in support for the opinions; the qualification of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Despite these requirements, the plaintiff filed his *Disclosure of Expert Witnesses* dated

July 26, 2006, which is attached hereto as Exhibit "G," identifying Steven Wenner, M.D.,

Michael D. Shinnick, Ed.D., Allan Baustin, M.D., and Mark A. Woodward, M.D. and Tomma

Henckel, M.A., and he failed to produce even one report in connection with the disclosure.

Instead, the plaintiff produced only the *Cirriculum Vitae* of Michael Shinnick and Dr.

Woodward, and nothing else.[5]  Again, the plaintiff's disclosure was entirely deficient, and the

defendants were forced to request from the plaintiff what he should have automatically

produced.  Immediately upon receipt of the *Expert Disclosures*, the defendants wrote to

plaintiff's counsel reminding him of the Rule and requesting that he produce the required

documents by the deadline, August 2, 2006.  See letter of August 1, 2006 (sent via facsimile and

U.S. Mail), attached hereto as Exhibit "H."  Once again, the defendants have received no

response to their request, and the plaintiff has failed to meet his deadline.  Instead, surprisingly,

---

5 The plaintiff later produce, by fax on August 2, 2006, the *CV* of Dr. Wenner.

the plaintiff sent, via facsimile, a *Notice of Site Inspection* dated August 1, 2006, which is attached hereto as Exhibit "I."   A site inspection should have been requested prior to the disclosure of the plaintiff's experts, and should have been conducted prior to the preparation of any report, which the defendants now assume does not exist.

Also upon receipt of the plaintiff's *Expert Disclosure*, on August 1, 2006, counsel for the defendants called the plaintiff's counsel to schedule dates for the experts' depositions and requested the same by letter, sent via facsimile, on August 1, 2006.  Again, the defendants have not heard from the plaintiff.

Based upon the obstructionist measures undertaken by the plaintiff, and the plaintiff's failure to adequately disclose his experts pursuant to Rule 26(a)(2)(B), the defendants request that the individuals "identified" by the plaintiff experts be excluded and that the plaintiff's carpal tunnel claim be dismissed.  Moreover, the plaintiff's inadequate disclosure and lack of response has, once again, severely prejudiced the defendants.  Without reports from the plaintiff's experts, or even medical records for that matter, the defendant cannot properly advise their retained experts, nor can they properly defend against theories of liability which have not been expressed, let alone supported.

In the alternative, the defendants request that the plaintiff's request for a site inspection be denied, and that the plaintiff be compelled to comply with the requirements of Rule 26(a)(2)(B) within thirty (30) days.  Further, the defendants request that be allowed thirty (30) days from the receipt of the information required by Rule 26(a)(2)(B) and the plaintiff's medical records, as discussed more fully above, to produce their experts' reports and to depose the plaintiff's experts. Finally, the defendants request that the plaintiff be sanctioned and the

defendants be reimbursed for the cost of preparing the instant *Motion*.

WHEREFORE, for the foregoing reasons, the parties respectfully request that the instant

*Motion* be GRANTED.

Respectfully submitted,
The Defendants,
Consolidated Rail Corporation and
CSX Transportation, Inc.
By Their Attorneys:

s/Lori A. Wirkus_____
Michael B. Flynn, BBO #559023
Lori A. Wirkus, BBO #635525
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA 02169
(617) 773-5500

Dated: August 4, 2006

G:\F & A\CASE FILES\CSX OCCUPATIONAL\CARPAL TUNNEL\CROWTHER\pleadings\Memo in Support of Emergency Motion.8.4.06.doc

# EXHIBIT "A"

COPY



**HANNON & JOYCE**
LAW OFFICES

☐ REPLY TO
900 CENTERTON ROAD
MOUNT LAUREL, NJ 08054

(856) 914-0220
(856) 914-0429 (FAX)

PUBLIC LEDGER BUILDING, SUITE 1000
150 SOUTH INDEPEDENCE MALL WEST
PHILADELPHIA, PENNSYLVANIA 19106-3413
(215) 446-4460   ~   (888) 222-FELA (US)   ~   (215) 446-4479 (FAX)
hjmail@hannonandjoyce.com

RECEIVED
NOV 7 2005
By

November 3, 2005

Lori A. Wirkus, Esquire
Flynn & Associates
400 Crown Colony Drive
Suite 200
Quincy, MA   02169

Re:   Geoffrey Crowther vs. Consolidated Rail Corporation, et al.
      05-30140-MAP

Dear Ms. Wirkus:

Enclosed please find Plaintiff's Initial Disclosures in the above-captioned action.

If you have any questions, please do not hesitate to contact me.  Thank you.

Very truly yours,

THOMAS J. JOYCE, III

TJJ:djr
Enc.
cc:   Michael J. McDevitt, Esquire

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Springfield Division

GEOFFREY CROWTHER,          :
                            :
            Plaintiff       :
                            :        No. 05-30140-MAP
v.                          :
                            :
CONSOLIDATED RAIL           :
CORPORATION, et al.         :
                            :
            Defendant       :

## PLAINTIFF'S INITIAL DISCLOSURES

Plaintiff, Geoffrey Crowther, by and through his attorneys, Hannon

& Joyce, submits Plaintiff's Initial Disclosures as follows:

1.    A.    <u>WITNESSES:</u>

      1.    Geoffrey Crowther

      2.    Geoffrey Crowther's co-workers.

      B.    <u>DOCUMENTS:</u>

      1.    Geoffrey Crowther's personnel file within the possession of

            Consolidated Rail Corporation.

      2.    Geoffrey Crowther's medical file within the possession of

            Consolidated Rail Corporation.

      3.    University of Massachusetts medical records

      C.    <u>DAMAGES:</u>

Geoffrey Crowther suffers from hearing loss in both ears.  See attached medical records.

D.  <u>INSURANCE AGREEMENTS</u>:

Consolidated Rail Corporation is self-insured.

2.  <u>EXPERTS WITNESSES</u>:

    1.  Tomma Henckel, M.A., CCC-A


HANNON & JOYCE

Date: November 3, 2005       By:_____
THOMAS J. JOYCE, III, ESQUIRE
Public Ledger Building, Suite 1000
150 S. Independence Mall West
Philadelphia, PA  19106
215-446-4460
Attorney for Plaintiff


MICHAEL J. McDEVITT, ESQUIRE
Lawson & Weitzen
88 Black Falcon Avenue, Suite 345
Boston, MA  02210
617-439-4990
Local Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I, THOMAS J. JOYCE, III, hereby certify that I forwarded a true and correct copy

of Plaintiff's Initial Disclosures to Lori A. Wirkus, Esquire, Flynn & Associates, 400

Colony Drive, Quincy, MA, 02169, attorney for Defendant, by depositing same in United

States Mail, first class, postage prepaid, this 3rd day of November, 2005.

THOMAS J. JOYCE, III



**UNIVERSITY of
MASSACHUSETTS**
17 Arnold House
715 North Pleasant St.
Amherst, MA 01003-9304

**UMASS**

Center for Language, Speech
and Hearing

413.545.2565

November 7, 2002

Hannon & Joyce
Curtis Center Suite 450
Independence Square West
Philadelphia, PA 19106-3323

To Whom It May Concern,

Enclosed please find a copy of Geoffrey Crowther's Hearing Evaluation Report. Please
contact our office at 413-545-2565 should you have any questions or need additional
information. Thank you for the referral. It was a pleasure working with Mr. Crowther.

Sincerely,

*Natalie Sitko*

Natalie Sitko, B.S.
Graduate Clinician

*Tomma Henckel*

Tomma Henckel, M.A., CCC-A
Clinical Instructor/Audiologist



UNIVERSITY of
MASSACHUSETTS
17 Arnold House
715 North Pleasant St.
Amherst, MA 01003-9304

Center for Language, Speech
and Hearing

413.545.2565

| | |
|---|---|
| Client's Name: | Geoffrey Crowther |
| Client's Address: | 119 Massasoit St. |
| | Northampton, MA 01060 |
| Phone Number: | 413-586-7188 |

| | |
|---|---|
| Date of Visit: | 11/6/02 |
| Birthdate: | 5/7/51 |
| File Number: | 21602 |
| Referral: | Hannon & Joyce |
| | Curtis Center Suite 450 |
| | Independence Square West |
| | Philadelphia, PA 19106 |

## Hearing Evaluation

### Statement of Problem

Mr. Crowther visited the Center for Language, Speech and Hearing on November 6, 2002 through a referral from Hannon & Joyce. He recently had his hearing screened at work, which is the CXS Railroad, where he has worked for twenty-seven years. In his most recent screening, his thresholds had risen significantly since the previous year so he wanted to follow-up with a full hearing evaluation.

### Background Information

Mr. Crowther worked in the engineering department at CXS Railroad up until about ten years ago. He built tracks and made repairs. He now works as a welding foreman. He is often around loud construction equipment. He also uses company radios frequently. The radios are also very loud. It was not until the 1990s that CXS started screening their employees' hearing and providing ear protection. Mr. Crowther reported that he wears ear plugs at work about 50% of the time that he spends in loud noise. He stated that for safety reasons, he cannot wear the ear protection 100% of the time.

Mr. Crowther reported that his family, specifically his children, seem to notice the hearing loss the most. His children often complain that the television volume is too high. Mr. Crowther reported that he has the most difficulty hearing in dinner situations, in the presence of background noise, and during introductions. He stated that he often does not hear names. He reported that he also has trouble at work. Mr. Crowther said that there have been times when he has not heard the radio, and it has lead to arguments with his boss.

Mr. Crowther does not have ear pain, but he has been experiencing tinnitus for a few years. The tinnitus is constant and is heard as a ringing in both ears. However, Mr. Crowther stated that he seems to experience more tinnitus in the right ear. He also has

Page 1 of 3: GC

been experiencing equilibrium problems for a few years. Mr. Crowther loses his balance when he makes quick movements or ceases movement too quickly.

Mr. Crowther reported no family history of hearing loss. He has never had any head or neck surgery or injury. He reported no chronic medical conditions, and he is not on any medications.

**Tests Administered**

Pure tone air conduction thresholds were found to be on the low end of normal in both the right and left ears between 250 and 2000 Hz. These thresholds fell between 20 and 25 dB HL. At 3000 Hz pure tone thresholds began to rise. The right ear threshold was found at 30 dB HL, and the left ear threshold was found at 40 dB HL. At 4000 Hz, Mr. Crowther's thresholds rose even higher to 65 dB HL and 60 dB HL in the right and left ears respectively. The thresholds began to drop again at 6000 and 8000 Hz creating a noise notch in the audiogram. At 6000 Hz the right and left ear thresholds were found at 45 dB HL. At 8000 Hz the right ear threshold was found at 40 dB HL and the left ear at 35 dB HL. Three frequency pure tone averages for the right and left ears were found at 23 dB HL. Pure tone bone conduction thresholds were found to be normal.

Speech reception thresholds were found at 20 dB HL for both the right and left ears. Speech discrimination was administered at 40 dB SL in both ears. Mr. Crowther was able to correctly discriminate 96% of words in the right ear and 92% of words in the left ear.

Tympanometric testing was administered and found to be normal in both ears. Acoustic reflexes and acoustic reflex decay were tested in response to Mr. Crowther's equilibrium difficulties. Acoustic reflexes were present at normal and reduced sensation levels ipsilaterally and contralaterally for both ears. Contralateral reflex decay at 10 dB SL at 1000 Hz was negative bilaterally.

**Assessment**

Mr. Crowther's thresholds reveal normal low frequency hearing sloping to moderate sensorineural hearing loss in the high frequencies. The notch found in the high frequencies confirms that noise exposure is likely the cause of the hearing loss. Middle ear function was found to be normal. Acoustic reflex and acoustic reflex decay testing revealed that retro-cochlear function is normal. However, the presence of reflexes at lower sensation levels suggest that the loss is cochlear in nature.

**Recommendations**

The following recommendations were made to Mr. Crowther.

1. Mr. Crowther should return have his hearing re-evaluated yearly to monitor any change in thresholds.

2. Mr. Crowther should continue to wear his ear protection as often as possible to conserve his hearing ability.

3. Mr. Crowther should see his physician regarding his imbalance problems.


Cc:  Geoffrey Crowther
     119 Massasoit St.
     Northampton, MA 01060

Cc:  Hannon & Joyce
     Curtis Center Suite 450
     Independence Square West
     Philadelphia, PA 19106-3323


*Natalie Sitko*

Natalie Sitko, B.S.
Graduate Clinician


*Tomma Henckel*

Tomma Henckel, M.A., CCC-A
Clinical Instructor/Audiologist



**UNIVERSITY of MASSACHUSETTS**
17 Arnold House
715 North Pleasant St.
Amherst, MA 01003-9304

Center for Language, Speech and Hearing

413.545.2565



NAME _Geoffrey Crowther_ AGE _51_ BIRTHDATE _5/7/51_ SEX _M_
ADDRESS _19 Massasoit St Northampton, MA_ AUDIOLOGIST _NS/TH_ TEST NO. _1_
REFERRED BY _Hannon + Joyce_ FILE NO. _21602_ DATE _11/6/02_

### PURE TONE AUDIOGRAM

Frequency in Hz



HEARING THRESHOLD LEVEL IN DECIBELS

Effective Masking Level in dB in Non Test Ear

AC

BC

### TYMPANOGRAM



AIR PRESSURE

COMPLIANCE

| STAPEDIUS REFLEX THRESHOLD | | | | | | |
|---|---|---|---|---|---|---|
| | Contralateral | | | | Ipsilateral | |
| | .5K | 1K | 2K | 4K | 1K | 2K |
| R | 105 | 95 | 95 | NR | 90 | 95 |
| Decay | | 105 | CI= | | | |
| L | 100 | 95 | 90 | 110 | 90 | 90 |
| Decay | | 105 | CI= | | | |

### SPEECH AUDIOMETRY

| Test | R | L | SF | |
|---|---|---|---|---|
| Sp. Reception Threshold (SRT) | 20 dB | 20 dB | dB | dB |
| SL | 40 dB | 40 dB | | |
| S/N | | | | |
| Masking Level          dB | dB | dB | dB | dB |
| Tolerance Level | dB | dB | dB | dB |
| Most Comfortable Loudness | dB | dB | dB | dB |

MLV ☑   RECORDING ☐      W-22 ☐   NU-6 ☑

_Tamera Hinckel, MA CCCA_
SUPERVISOR

| PURE TONE AVERAGES (500, 1000, 2000 Hz) | | |
|---|---|---|
| EAR | BETTER TWO FREQ. | ALL THREE FREQ. |
| RIGHT | 23 | 23 |
| LEFT | 23 | 23 |

### AUDIOGRAM CODE

| | AIR | | BONE | | |
|---|---|---|---|---|---|
| EAR | Un-Masked | Masked | Un-Masked | Masked | Color |
| R | O—O | ∆–∆ | < - < | [ - [ | Red |
| L | X—X | ▢–▢ | > - > | ] - ] | Blue |

# HANNON & JOYCE HEARING TESTING PROGRAM

Patient Name: Geoffrey Crowther        Social Security No.: 028362353

Street
Address: 19 Massasoit St. Northampton        City/State/Zip: Northampton, MA 01060

Telephone: (413) 586-7188        Date of Birth: 5/7/51

Railroad: CSX        Union: _____        Are you Retired: No    If so, what year _____

## AUDIOLOGIC EVALUATION



OdB = 1969
ANSI THRESHOLDS        FREQUENCY IN HERTZ

Speech Threshold: R 20 dB    L 20 dB

Discrimination Score: dBSL R 96 %    dBSL L 92 %

Audiologist Name: Tomma Henckel
Center for Language, Speech & Hearing

Address: 17 Arnold House
UMass

City/State/Zip: Amherst, MA  01003-0410
(413) 545-2565

Date of Test: 11/6/02

## AUDIOGRAM CODE

|  | R/O | L/X |
|---|---|---|
| Air Conduction | | |
| Masked Air Conduction | ▲ | ■ |
| Bone Conduction | [ | ] |
| No Response | ↓ | ↓ |
| Could Not Test | CNT | |

Hearing Aid Use _____

_____

_____

# EXHIBIT "B"

# FLYNN & ASSOCIATES, P.C.

## ATTORNEYS AT LAW

MICHAEL B. FLYNN*
RICHARD A. DAVIDSON, JR.
LORI A. WIRKUS⁺
JOHN E. YOUNG, IV
VALERIE A. MURPHY

*also admitted in NY
⁺also admitted in CT

OF COUNSEL:
DURKIN, MCDONNELL,
CLIFTON & O'DONNELL

400 CROWN COLONY DRIVE
SUITE 200
QUINCY, MASSACHUSETTS  02169
TELEPHONE (617)773-5500
FACSIMILE (617)773-5510
E-MAIL: flynnlaw@flynnassoc.com

BOSTON OFFICE:
160 STATE STREET
EIGHTH FLOOR
BOSTON, MA  02109
TEL: (617)722-8253
FAX: (617)722-8254

DETROIT OFFICE:
PENOBSCOT BUILDING
645 GRISWOLD STREET, SUITE 3253
DETROIT, MI 48226
TEL: (313)963-3033
FAX: (313)963-3011

November 8, 2005

Thomas J. Joyce, III, Esq.
Hannon & Joyce
The Public Ledger Building, Suite 1000
150 S. Independence Mall West
Philadelphia, PA 19106

RE:    Crowther vs. Consolidated Rail Corporation, et al.
       U.S.D.C., Dist. of Mass. (Springfield), C.A. Docket No. 05-30140-MAP

Dear Tom:

       I am in receipt of your client's *Initial Disclosures* dated November 3, 2005, and I thank you forwarding the same. In reviewing the disclosures, they appear to pertain only to your client's claim for hearing loss, and seem to omit any reference to his claim for carpal tunnel syndrome. In fact, the only medical records we received were relative to his claimed hearing loss. Therefore, would you kindly forward any and all materials relating to the plaintiff's claim for carpal tunnel syndrome, including his medical records pertaining to his alleged CTS.

       Thank you for your prompt attention to this matter.

                                        Sincerely,

                                        Lori A. Wirkus

Encl.
cc:    Michael B. Flynn, Esq.
       John B. Greenlee, Esq.
G:\F & A\CASE FILES\CSX OCCUPATIONAL\CARPAL TUNNEL\CROWTHER\correspondence\attorney\Joyce re.initial disclosure.11.8.05.doc

# EXHIBIT "C"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEOFFREY CROWTHER,<br>Plaintiff,<br><br>vs.<br><br>CONSOLIDATED RAIL CORPORATION<br>and CSX TRANSPORTATION, INC.,<br>Defendants. | CIVIL ACTION NO.: 05-30140-MAP |

## DEFENDANTS, CONSOLIDATED RAIL CORPORATION AND CSX TRANSPORTATION, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO THE PLAINTIFF, GEOFFREY CROWTHER

The defendants, Consolidated Rail Corporation ("Conrail") and CSX Transportation, Inc.

("CSX"), by and through their attorneys, Flynn & Associates, P.C., hereby request that the

plaintiff, Geoffrey Crowther, respond to the following requests under oath and serve a copy of

the responses thereto upon defendants' counsel within thirty (30) days in accordance with

Fed.R.Civ.P. 34.  These requests are to be regarded as continuing and the plaintiff is requested to

provide, by way of supplementary responses thereto, such additional information as my hereafter

be obtained by the plaintiff or any person on his behalf which will augment or otherwise modify

any response now given to the following requests.

**REQUEST NO. 1:**

Any and all medical records, reports, letters and statements, including full and complete hospital

records and doctor's records, which were made in connection with the injuries allegedly suffered

by the plaintiff.

**RESPONSE NO. 1:**

1

**REQUEST NO. 2:**

Any and all medical bills in the possession, custody or control of the plaintiff which were

incurred because of injuries allegedly suffered as alleged in the plaintiff's *Complaint*.

**RESPONSE NO. 2:**




**REQUEST NO. 3:**

Any and all statements taken from or given by the plaintiff which relate in any way to the his

injuries as alleged in his *Complaint*.

**RESPONSE NO. 3:**




**REQUEST NO. 4:**

Any and all statements taken from or given by the defendants, Conrail and/or CSX, their agents,

servants and/or employees which relate in any way to the to injuries to the plaintiff as alleged in

his *Complaint*.

**RESPONSE NO. 4:**




**REQUEST NO. 5:**

Any and all reports and/or statements, whether in writing or recorded by mechanical and/or

electronic means, made by the plaintiff to any of his employers which relate in any way to the

2

allegations contained in the plaintiff's *Complaint* and/or his alleged injuries.

**RESPONSE NO. 5:**

**REQUEST NO. 6:**

Any and all reports, statements and letters in the possession, custody or control of the plaintiff

which were filled out and/or completed by any expert or experts concerning the plaintiff's

injuries alleged in his *Complaint*.

**RESPONSE NO. 6:**

**REQUEST NO. 7:**

Any and all State and Federal Income Tax returns which the plaintiff filed with the State and/or

the Federal Government from 1977 and continuing to the present.

**RESPONSE NO. 7:**

**REQUEST NO. 8:**

Any and all documents pertaining to the investigation of the plaintiff's alleged injuries.

**RESPONSE NO. 8:**

3

**REQUEST NO. 9:**

If the plaintiff maintains a diary, a copy of each and every diary entry from January 1, 1977 to the

present.

**RESPONSE NO. 9:**




**REQUEST NO. 10:**

Any and all medical records, reports, letters and statements, including full and complete hospital

records and doctor's records, which were made in connection with any illnesses or injuries or

other physical, mental or other conditions the plaintiff incurred, suffered from or for which he

has been treated relative to any problems with his shoulders, back, neck, arms and/or legs and/or

any part thereof and/or ears, head and/or hearing.

**RESPONSE NO. 10:**




**REQUEST NO. 11:**

Any and all documents containing the names and addresses of all witnesses known to the

plaintiff who were witnesses either directly or indirectly to the unreasonably unsafe working

conditions and/or excessive/repetitive movement and/or excessive noise to which the plaintiff

was allegedly exposed.

**RESPONSE NO. 11:**

4

**REQUEST NO. 12:**

Any and all reports, statements, signed or unsigned, transcribed, and/or written, in the possession, custody or control of the plaintiff which were filled out or completed by any witness to the unreasonably unsafe working conditions and/or excessive/repetitive movement and/or excessive hearing to which the plaintiff was allegedly exposed.

**RESPONSE NO. 12:**

**REQUEST NO. 13:**

Any and all documents, including but not limited to notices, correspondence, reports and/or memoranda from Conrail and/or CSX within the possession, custody or control of the plaintiff, informing the plaintiff of the results of any and all repetitive stress, carpal tunnel, and/or nerve conduction tests, and/or hearing tests including but not limited to audiometric testing.

**RESPONSE NO. 13:**

**REQUEST NO. 14:**

Any and all safety rules and/or policies and procedures provided by Conrail and/or CSX during the plaintiff's employment with said defendants.

**RESPONSE NO. 14:**

5

**REQUEST NO. 15:**

Any and all documents, including but not limited to notices, correspondence, reports and/or

memoranda, provided by Conrail and/or CSX informing and/or warning the plaintiff of the

potential dangers of repetitive stress, "wear-out" and/or carpal tunnel syndrome and/or hearing

loss.

**RESPONSE NO. 15:**

**REQUEST NO. 16:**

Any and all documents relating to the availability of safety protections and equipment furnished

by Conrail and/or CSX to the plaintiff.

**RESPONSE NO. 16:**

**REQUEST NO. 17:**

Copies of any and all documents pertaining to disability benefits, annuities, railroad retirement

benefits and/or temporary wage continuation benefits which the plaintiff has received and/or

applied for, either as a result of the incidents which are the subject of his *Complaint* or for any

other reason.

**RESPONSE NO. 17:**

**REQUEST NO. 18:**

If the plaintiff is not able to provide records in accordance with any of the above-stated requests, then a duly executed authorization signed by the plaintiff for such records is hereby requested in the alternative.

**RESPONSE NO. 18:**

**REQUEST NO. 19:**

In the event that you have made any other claim for bodily injuries of any kind against any person, firm or corporation (including insurance company), please produce copies of all documents in your possession, custody and/or control related thereto.

**RESPONSE NO. 19:**

**REQUEST NO. 20:**

Please produce a copy of any flyer, advertisement, letter or any other solicitation for any screening, testing or presentation that the plaintiff attended sponsored by any law firm or union for the types of injuries for which the plaintiff is making a claim.

**RESPONSE NO. 20:**

**REQUEST NO. 21:**

Any and all documents pertaining to any "screening event" the plaintiff attended, and/or

diagnostic testing the plaintiff received in connection with his claim for carpal tunnel syndrome

and/or hearing loss.

**RESPONSE NO. 21:**


Respectfully submitted,

CONSOLIDATED RAIL CORPORATION and
CSX TRANSPORTATION, INC.,
by their attorneys

_____

Michael B. Flynn          BBO # 559023
Lori A. Wirkus            BBO #635525
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA 02169
(617) 773-5500

Dated:  November 30, 2005
G:\F & A\CASE FILES\CSX OCCUPATIONAL\CARPAL TUNNEL\CROWTHER\pleadings\Rpds to pl.11.30.05.doc


CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing
pleading on all parties by hand/mail delivering same, to
all counsel of record.
Signed under the pains and penalties of perjury.

DATED        _____
                    11/30/05

8

## HIPAA AUTHORIZATION TO USE OR DISCLOSE PROTECTED HEALTH INFORMATION

1.    I hereby authorize  Umass Medical Center  to use or disclose the following protected health information from the medical records of the patient listed below. I understand that information used or disclosed pursuant to this authorization could be subject to redisclosure by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

2.    Patient Name: _____ Date of Birth: _____

Address:_____
              Street                            City                          State            Zip

3.    Information to be disclosed to:    LORI A. WIRKUS, ESQ., FLYNN & ASSOCIATES, P.C.,
                                                        400 CROWN COLONY DRIVE, QUINCY, MA 02169

4.    Disclose the following information for treatment dates:

☐ Complete Records        ☐ Consult                ☐ Physical Therapy
☐ Abstract                      ☐ Outpatient Reports   ☐ Emergency Reports
☐ Face Sheet                  ☐ X-Rays                  ☐ Other Specified

☐ Discharge Summary     ☐ Laboratory            _____
☐ History & Physical       ☐ Pathology             _____

5.    The above information is disclosed for the following purposes:

☐ Medical Care          ☐ Legal          ☐ Insurance     ☐ Personal      ☐ Other _____

6.    I understand I may revoke this authorization at any time by requesting such of the above referenced hospital/physician practice in writing, unless action has already been taken in reliance upon it, or during a contestability period under applicable law. I also understand that I may refuse to sign this authorization. Treatment, payment, enrollment in a health plan or eligibility for benefits will not be conditioned on signing an authorization if to do so would be prohibited by federal or state law.  I understand an authorization may be required to participate in research or where health care services are provided solely for the purpose of creating health information for a third party and that if I refuse to sign an authorization, those services may be denied.

7.    This authorization expires on [upon]    _____
                                                                          Date or Event

_____        _____
8. Signature of Patient or Legal Representative      9.  Date
Geoffrey Crowther


_____        _____
10.  Printed Name of Patient or Patient's Representative    11.  Relationship to Patient or
                                                                      Authority to Act For Patient
                                                                      (Patient Representative Only)

IMPORTANT:  THIS AUTHORIZATION SHALL BE DEEMED INVALID UNLESS ALL RELEVANT NUMBERED ENTRIES ARE COMPLETED.  A COPY OF THE EXECUTED ORIGINAL OF THIS DOCUMENT SHALL BE DEEMED BY YOU AS FULLY SUFFICIENT FOR THE RELEASE OF THIS INFORMATION.

## <u>HIPAA AUTHORIZATION TO USE OR DISCLOSE PROTECTED HEALTH INFORMATION</u>

1.      I hereby authorize <u>Umass Center for Learning, Speech and Language</u> to use or disclose the following protected health information from the medical records of the patient listed below. I understand that information used or disclosed pursuant to this authorization could be subject to redisclosure by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

2.      Patient Name: _____ Date of Birth: _____

Address:_____
    Street                      City                      State              Zip

3.      Information to be disclosed to:    <u>LORI A. WIRKUS, ESQ., FLYNN & ASSOCIATES, P.C.,</u>
                                          <u>400 CROWN COLONY DRIVE, QUINCY, MA 02169</u>

4.      Disclose the following information for treatment dates:

☐ Complete Records          ☐ Consult              ☐ Physical Therapy
☐ Abstract                  ☐ Outpatient Reports   ☐ Emergency Reports
☐ Face Sheet                ☐ X-Rays               ☐ Other Specified

☐ Discharge Summary         ☐ Laboratory           _____
☐ History & Physical        ☐ Pathology            _____

5.      The above information is disclosed for the following purposes:

☐ Medical Care      ☐ Legal      ☐ Insurance    ☐ Personal    ☐ Other _____

6.      I understand I may revoke this authorization at any time by requesting such of the above referenced hospital/physician practice in writing, unless action has already been taken in reliance upon it, or during a contestability period under applicable law. I also understand that I may refuse to sign this authorization. Treatment, payment, enrollment in a health plan or eligibility for benefits will not be conditioned on signing an authorization if to do so would be prohibited by federal or state law. I understand an authorization may be required to participate in research or where health care services are provided solely for the purpose of creating health information for a third party and that if I refuse to sign an authorization, those services may be denied.

7.      This authorization expires on [upon]    _____
                                                Date or Event

_____         _____
8. Signature of Patient or Legal Representative    9. Date
Geoffrey Crowther

_____         _____
10. Printed Name of Patient or Patient's Representative    11. Relationship to Patient or
                                                          Authority to Act For Patient
                                                          (Patient Representative Only)

<u>IMPORTANT</u>:  THIS AUTHORIZATION SHALL BE DEEMED INVALID UNLESS ALL RELEVANT NUMBERED ENTRIES ARE COMPLETED.  A COPY OF THE EXECUTED ORIGINAL OF THIS DOCUMENT SHALL BE DEEMED BY YOU AS FULLY SUFFICIENT FOR THE RELEASE OF THIS INFORMATION.

## HIPAA AUTHORIZATION TO USE OR DISCLOSE PROTECTED HEALTH INFORMATION

1.      I hereby authorize Berkshire Health Systems – Berkshire Medical Center to use or disclose the following protected health information from the medical records of the patient listed belo.  I understand that information used or disclosed pursuant to this authorization could be subject to redisclosure by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

2.      Patient Name: _____ Date of Birth: _____

Address:_____
        Street                          City                    State           Zip

3.      Information to be disclosed to:     LORI A. WIRKUS, ESQ., FLYNN & ASSOCIATES, P.C.,
                                           400 CROWN COLONY DRIVE, QUINCY, MA 02169

4.      Disclose the following information for treatment dates:

□ Complete Records        □ Consult              □ Physical Therapy
□ Abstract                □ Outpatient Reports   □ Emergency Reports
□ Face Sheet              □ X-Rays               □ Other Specified

□ Discharge Summary       □ Laboratory           _____
□ History & Physical      □ Pathology            _____

5.      The above information is disclosed for the following purposes:

□ Medical Care        □ Legal        □ Insurance   □ Personal     □ Other _____

6.      I understand I may revoke this authorization at any time by requesting such of the above referenced hospital/physician practice in writing, unless action has already been taken in reliance upon it, or during a contestability period under applicable law. I also understand that I may refuse to sign this authorization.  Treatment, payment, enrollment in a health plan or eligibility for benefits will not be conditioned on signing an authorization if to do so would be prohibited by federal or state law.  I understand an authorization may be required to participate in research or where health care services are provided solely for the purpose of creating health information for a third party and that if I refuse to sign an authorization, those services may be denied.

7.      This authorization expires on [upon]    _____
                                               Date or Event

_____              _____
8. Signature of Patient or Legal Representative     9. Date
Geoffrey Crowther

_____              _____
10. Printed Name of Patient or Patient's Representative    11. Relationship to Patient or
                                                          Authority to Act For Patient
                                                          (Patient Representative Only)

IMPORTANT:  THIS AUTHORIZATION SHALL BE DEEMED INVALID UNLESS ALL
RELEVANT NUMBERED ENTRIES ARE COMPLETED.  A COPY OF THE EXECUTED
ORIGINAL OF THIS DOCUMENT SHALL BE DEEMED BY YOU AS FULLY SUFFICIENT FOR

## HIPAA AUTHORIZATION TO USE OR DISCLOSE PROTECTED HEALTH INFORMATION

1.      I hereby authorize Berkshire Medical Group, P.C. to use or disclose the following protected health information from the medical records of the patient listed below.   I understand that information used or disclosed pursuant to this authorization could be subject to redisclosure by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

2.      Patient Name: _____Date of Birth: _____

Address: _____
                    Street                           City                          State             Zip

3.      Information to be disclosed to:   LORI A. WIRKUS, ESQ., FLYNN & ASSOCIATES, P.C.,
                                                              400 CROWN COLONY DRIVE, QUINCY, MA 02169

4.      Disclose the following information for treatment dates:

□ Complete Records          □ Consult                    □ Physical Therapy
□ Abstract                        □ Outpatient Reports    □ Emergency Reports
□ Face Sheet                     □ X-Rays                     □ Other Specified

□ Discharge Summary        □ Laboratory              _____
□ History & Physical          □ Pathology              _____

5.      The above information is disclosed for the following purposes:

□ Medical Care          □ Legal          □ Insurance   □ Personal      □ Other _____

6.      I understand I may revoke this authorization at any time by requesting such of the above referenced hospital/physician practice in writing, unless action has already been taken in reliance upon it, or during a contestability period under applicable law. I also understand that I may refuse to sign this authorization.  Treatment, payment, enrollment in a health plan or eligibility for benefits will not be conditioned on signing an authorization if to do so would be prohibited by federal or state law.  I understand an authorization may be required to participate in research or where health care services are provided solely for the purpose of creating health information for a third party and that if I refuse to sign an authorization, those services may be denied.

7.      This authorization expires on [upon]        _____
                                                                            Date or Event

_____            _____
8. Signature of Patient or Legal Representative       9.  Date
Geoffrey Crowther

_____            _____
10.  Printed Name of Patient or Patient's Representative       11.  Relationship to Patient or
                                                                                      Authority to Act For Patient
                                                                                      (Patient Representative Only)

IMPORTANT:  THIS AUTHORIZATION SHALL BE DEEMED INVALID UNLESS ALL RELEVANT NUMBERED ENTRIES ARE COMPLETED.  A COPY OF THE EXECUTED ORIGINAL OF THIS DOCUMENT SHALL BE DEEMED BY YOU AS FULLY SUFFICIENT FOR THE RELEASE OF THIS INFORMATION.

## HIPAA AUTHORIZATION TO USE OR DISCLOSE PROTECTED HEALTH INFORMATION

1.      I hereby authorize Berkshire Occupational Health to use or disclose the following protected health information from the medical records of the patient listed below. I understand that information used or disclosed pursuant to this authorization could be subject to redisclosure by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

2.      Patient Name: _____ Date of Birth: _____

Address:_____
　　　　　Street　　　　　　　　City　　　　　　　State　　　　Zip

3.      Information to be disclosed to:    LORI A. WIRKUS, ESQ., FLYNN & ASSOCIATES, P.C.,
                                          400 CROWN COLONY DRIVE, QUINCY, MA 02169

4.      Disclose the following information for treatment dates:

☐ Complete Records        ☐ Consult              ☐ Physical Therapy
☐ Abstract                ☐ Outpatient Reports   ☐ Emergency Reports
☐ Face Sheet              ☐ X-Rays               ☐ Other Specified

☐ Discharge Summary       ☐ Laboratory           _____
☐ History & Physical      ☐ Pathology            _____

5.      The above information is disclosed for the following purposes:

☐ Medical Care        ☐ Legal        ☐ Insurance    ☐ Personal      ☐ Other _____

6.      I understand I may revoke this authorization at any time by requesting such of the above referenced hospital/physician practice in writing, unless action has already been taken in reliance upon it, or during a contestability period under applicable law. I also understand that I may refuse to sign this authorization. Treatment, payment, enrollment in a health plan or eligibility for benefits will not be conditioned on signing an authorization if to do so would be prohibited by federal or state law. I understand an authorization may be required to participate in research or where health care services are provided solely for the purpose of creating health information for a third party and that if I refuse to sign an authorization, those services may be denied.

7.      This authorization expires on [upon]    _____
                                                Date or Event

_____        _____
8. Signature of Patient or Legal Representative    9. Date
Geoffrey Crowther

_____        _____
10. Printed Name of Patient or Patient's Representative    11. Relationship to Patient or
                                                          Authority to Act For Patient
                                                          (Patient Representative Only)

IMPORTANT: THIS AUTHORIZATION SHALL BE DEEMED INVALID UNLESS ALL RELEVANT NUMBERED ENTRIES ARE COMPLETED. A COPY OF THE EXECUTED ORIGINAL OF THIS DOCUMENT SHALL BE DEEMED BY YOU AS FULLY SUFFICIENT FOR THE RELEASE OF THIS INFORMATION.

## HIPAA AUTHORIZATION TO USE OR DISCLOSE PROTECTED HEALTH INFORMATION

1.      I hereby authorize Holyoke Hospital Occupational Health to use or disclose the following protected health information from the medical records of the patient listed below. I understand that information used or disclosed pursuant to this authorization could be subject to redisclosure by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

2.      Patient Name: _____ Date of Birth: _____

Address: _____
               Street                        City                    State          Zip

3.      Information to be disclosed to:      LORI A. WIRKUS, ESQ., FLYNN & ASSOCIATES, P.C.,
                                            400 CROWN COLONY DRIVE, QUINCY, MA 02169

4.      Disclose the following information for treatment dates:

☐ Complete Records          ☐ Consult              ☐ Physical Therapy
☐ Abstract                  ☐ Outpatient Reports   ☐ Emergency Reports
☐ Face Sheet                ☐ X-Rays               ☐ Other Specified

☐ Discharge Summary         ☐ Laboratory           _____
☐ History & Physical        ☐ Pathology            _____

5.      The above information is disclosed for the following purposes:

☐ Medical Care        ☐ Legal        ☐ Insurance    ☐ Personal      ☐ Other _____

6.      I understand I may revoke this authorization at any time by requesting such of the above referenced hospital/physician practice in writing, unless action has already been taken in reliance upon it, or during a contestability period under applicable law. I also understand that I may refuse to sign this authorization. Treatment, payment, enrollment in a health plan or eligibility for benefits will not be conditioned on signing an authorization if to do so would be prohibited by federal or state law. I understand an authorization may be required to participate in research or where health care services are provided solely for the purpose of creating health information for a third party and that if I refuse to sign an authorization, those services may be denied.

7.      This authorization expires on [upon]      _____
                                                Date or Event

_____          _____
8. Signature of Patient or Legal Representative      9. Date
Geoffrey Crowther

_____          _____
10. Printed Name of Patient or Patient's Representative      11. Relationship to Patient or
                                                            Authority to Act For Patient
                                                            (Patient Representative Only)

IMPORTANT: THIS AUTHORIZATION SHALL BE DEEMED INVALID UNLESS ALL RELEVANT NUMBERED ENTRIES ARE COMPLETED. A COPY OF THE EXECUTED ORIGINAL OF THIS DOCUMENT SHALL BE DEEMED BY YOU AS FULLY SUFFICIENT FOR THE RELEASE OF THIS INFORMATION.

## HIPAA AUTHORIZATION TO USE OR DISCLOSE PROTECTED HEALTH INFORMATION

1.      I hereby authorize Holyoke Hospital to use or disclose the following protected health information from the medical records of the patient listed below. I understand that information used or disclosed pursuant to this authorization could be subject to redisclosure by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

2.      Patient Name: _____ Date of Birth: _____

Address: _____
                Street                    City                    State            Zip

3.      Information to be disclosed to:    LORI A. WIRKUS, ESQ., FLYNN & ASSOCIATES, P.C.,
                                          400 CROWN COLONY DRIVE, QUINCY, MA 02169

4.      Disclose the following information for treatment dates:

☐ Complete Records       ☐ Consult              ☐ Physical Therapy
☐ Abstract               ☐ Outpatient Reports   ☐ Emergency Reports
☐ Face Sheet             ☐ X-Rays               ☐ Other Specified

☐ Discharge Summary      ☐ Laboratory           _____
☐ History & Physical     ☐ Pathology            _____

5.      The above information is disclosed for the following purposes:

☐ Medical Care       ☐ Legal       ☐ Insurance   ☐ Personal    ☐ Other _____

6.      I understand I may revoke this authorization at any time by requesting such of the above referenced hospital/physician practice in writing, unless action has already been taken in reliance upon it, or during a contestability period under applicable law. I also understand that I may refuse to sign this authorization. Treatment, payment, enrollment in a health plan or eligibility for benefits will not be conditioned on signing an authorization if to do so would be prohibited by federal or state law. I understand an authorization may be required to participate in research or where health care services are provided solely for the purpose of creating health information for a third party and that if I refuse to sign an authorization, those services may be denied.

7.      This authorization expires on [upon]    _____
                                                      Date or Event

_____          _____
8. Signature of Patient or Legal Representative    9. Date
Geoffrey Crowther

_____          _____
10. Printed Name of Patient or Patient's Representative    11. Relationship to Patient or
                                                              Authority to Act For Patient
                                                              (Patient Representative Only)

IMPORTANT: THIS AUTHORIZATION SHALL BE DEEMED INVALID UNLESS ALL RELEVANT NUMBERED ENTRIES ARE COMPLETED. A COPY OF THE EXECUTED ORIGINAL OF THIS DOCUMENT SHALL BE DEEMED BY YOU AS FULLY SUFFICIENT FOR THE RELEASE OF THIS INFORMATION.

## HIPAA AUTHORIZATION TO USE OR DISCLOSE PROTECTED HEALTH INFORMATION

1.      I hereby authorize Massachusetts Department of Transportation to use or disclose the following protected health information from the medical records of the patient listed below. I understand that information used or disclosed pursuant to this authorization could be subject to redisclosure by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

2.      Patient Name: _____ Date of Birth: _____

Address: _____
              Street                          City                          State              Zip

3.      Information to be disclosed to:    LORI A. WIRKUS, ESQ., FLYNN & ASSOCIATES, P.C.,
                                                              400 CROWN COLONY DRIVE, QUINCY, MA 02169

4.      Disclose the following information for treatment dates:

☐ Complete Records          ☐ Consult                  ☐ Physical Therapy
☐ Abstract                      ☐ Outpatient Reports    ☐ Emergency Reports
☐ Face Sheet                   ☐ X-Rays                  ☐ Other Specified

☐ Discharge Summary        ☐ Laboratory            _____
☐ History & Physical          ☐ Pathology            _____

5.      The above information is disclosed for the following purposes:

☐ Medical Care          ☐ Legal          ☐ Insurance      ☐ Personal        ☐ Other _____

6.      I understand I may revoke this authorization at any time by requesting such of the above referenced hospital/physician practice in writing, unless action has already been taken in reliance upon it, or during a contestability period under applicable law. I also understand that I may refuse to sign this authorization. Treatment, payment, enrollment in a health plan or eligibility for benefits will not be conditioned on signing an authorization if to do so would be prohibited by federal or state law. I understand an authorization may be required to participate in research or where health care services are provided solely for the purpose of creating health information for a third party and that if I refuse to sign an authorization, those services may be denied.

7.      This authorization expires on [upon]          _____
                                                                          Date or Event

_____          _____
8. Signature of Patient or Legal Representative          9.  Date
Geoffrey Crowther

_____          _____
10.  Printed Name of Patient or Patient's Representative          11.  Relationship to Patient or
                                                                                          Authority to Act For Patient
                                                                                          (Patient Representative Only)

IMPORTANT:  THIS AUTHORIZATION SHALL BE DEEMED INVALID UNLESS ALL RELEVANT NUMBERED ENTRIES ARE COMPLETED.  A COPY OF THE EXECUTED ORIGINAL OF THIS DOCUMENT SHALL BE DEEMED BY YOU AS FULLY SUFFICIENT FOR THE RELEASE OF THIS INFORMATION.

## CONSENT TO RELEASE OF U.S. RAILROAD RETIREMENT BOARD RECORDS

Date:

Dear Sir/Madam:

Kindly furnish attorney, Lori A. Wirkus, Esq. of FLYNN & ASSOCIATES, P.C., 400 Crown Colony Drive, Suite 200, Quincy, MA 02169, with a certified copy of ANY and ALL records and documents in your possession, including but not limited to, payment records, insurance records, disability benefits, annuity benefits, medical records, doctors' and nurses' notes and/or reports, reports of physical examinations and laboratory reports, audiometric testing, X-ray, MRI, EMG or CT scan reports and physical therapy reports, progress notes and consultations, medication records and physicians order, admission and discharge reports or summaries, operative or surgical reports, pathology reports, correspondence between physicians and any insurance company or attorney and patient billing. If there is any charge therefore, will you please forward a bill for same to Lori A. Wirkus.

Name:        Geoffrey Crowther

Address:

S.S. No.:
D/O/B:

**A copy of the executed original of this document shall be deemed by you as fully sufficient for the release of this information.**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GEOFFREY CROWTHER                    CIVIL ACTION

       Plaintiff

                         NO.  05-30140-MAP

    vs.

CONSOLIDATED RAIL
CORPORATION, et al.

       Defendants

PLAINTIFF'S ANSWERS TO
DEFENDANTS' REQUEST TO PRODUCE

Plaintiff, by and through his undersigned attorney, hereby answers Defendants' Document Requests as follows:

1.    See previously provided copies of Plaintiff's medical records/reports. Copies of additional records/reports to be provided.

2.    Copies of unpaid medical bills, if any, to be provided.

3.    Plaintiff is presently unable to making any statements in connection with this matter.

4.    Plaintiff is presently unable to recall any statements having been obtained from anyone on his behalf in connection with this matter.

5.    Plaintiff is presently unable to making any statements in connection with this matter.

6.    Expert witness disclosures to be provided in accordance with the Court's deadlines.

7.    Copies of Plaintiff's income tax returns to be provided should a wage loss claim arise in the future in this matter.

8.    Plaintiff is presently not in possession of any documents pertaining to any investigation(s) which may have been made by Defendants in connection with this matter.

9.    None that Plaintiff is presently able to recall.

10.    See previously provided copies of Plaintiff's medical records/reports. Copies of additional records/reports to be provided.

11.    Witnesses in regard to this matter include plaintiff's railroad co-workers and/or supervisors, as well as plaintiff's treating physicians. See previously provided copies of Plaintiff's medical records/reports. Copies of additional records/reports to be provided. Plaintiff further intends to call certain corporate officers of the Defendants to testify in this matter on the issue of liability, as well as ergonomic expert, Dr. Michael Shinnick. Discovery is ongoing.

12.    Plaintiff is presently unable to recall any statements having been obtained from anyone on his behalf in connection with this matter.

13.    None that Plaintiff is presently able to recall.

14.    See Plaintiff's railroad employment files in Defendants' possession.

15.    None that Plaintiff is presently able to recall.

16.    See Plaintiff's railroad employment files in Defendants' possession.

17.    Plaintiff has not applied for any sickness and/or disability benefits to date as a result of his injuries alleged herein.

18.    Plaintiff has previously provided executed authorizations for the release of various records in this matter.

19.    Plaintiff recalls prior claims with the railroad for injuries sustained at work as referenced in his Interrogatory answer No. 13. See Plaintiff's railroad employment files in Defendants' possession.

20.    None that Plaintiff is presently able to recall and/or is presently in Plaintiff's possession.

21.    See previously provided copies of Plaintiff's medical records/reports.

Plaintiff reserves the right to amend or supplement Plaintiff's Answers to Defendants' Request for Production prior to trial.

Dated: 6/27/06                         By: _____
                                       THOMAS J. JOYCE, III, ESQUIRE
                                       900 Centerton Road
                                       Mount Laurel, NJ 08054
                                       (856) 914-0220
                                       Attorney for Plaintiff

<u>VERIFICATION</u>

I, *Geoffrey C. Crowther* , have read the foregoing.  The statements herein are correct to the best of my personal knowledge, information and/or belief.

This statement and verification is made subject to the penalties of 18 Pa. C.S.A. Sec. 4904 relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.

(Signature)

Date:    6/20/06

Verification 12/10/92

<u>CERTIFICATE OF SERVICE</u>

I, THOMAS J. JOYCE, III, hereby certify that I forwarded true and correct copies of Plaintiff's Answers to Defendants' Interrogatories and Request to Produce to Lori A. Wirkus, Esquire, attorney for Defendants, at Flynn & Associates, 400 Crown Colony Drive, Suite 200, Quincy, MA 02169, by depositing same in United States Mail, this 27th day of June 2006.

THOMAS J. JOYCE, III

# EXHIBIT "D"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GEOFFREY CROWTHER,
     Plaintiff,

vs.

CONSOLIDATED RAIL CORPORATION
and CSX TRANSPORTATION, INC.,
     Defendants.

CIVIL ACTION NO.: 05-30140-MAP

## DEFENDANTS, CONSOLIDATED RAIL CORPORATION AND CSX TRANSPORTATION, INC.'S FIRST SET OF INTERROGATORIES TO BE ANSWERED BY THE PLAINTIFF, GEOFFREY CROWTHER

The defendants, Consolidated Rail Corporation ("Conrail") and CSX Transportation, Inc. ("CSX"), by and through their attorneys, Flynn & Associates, P.C., hereby request that the plaintiff, Geoffrey Crowther, answer the following interrogatories under oath and serve a copy of the answers thereto upon defendants' counsel within thirty (30) days in accordance with Fed.R.Civ.P. 33. These interrogatories are to be regarded as continuing and the plaintiff is requested to provide, by way of supplementary answers thereto, such additional information as my hereafter be obtained by the plaintiff or any person on his behalf which will augment or otherwise modify any answer or answers now given to the following interrogatories.

## INTERROGATORY NO. 1:

Please state the following:

(a)     Full name;

(b)     All other names by which you have ever been known;

(c)     Date of birth;

(d)     Social Security number;

(e)     Railroad identification number;

  (f)  Current address;

  (g)  Height;

  (h)  Weight; and

  (i)  Driver's License Number.

**ANSWER NO. 1:**



**INTERROGATORY NO. 2:**

  Please state name(s) and address of your present spouse, if any, and of all other former spouses, if any, and the dates during which you were married to each.

**ANSWER NO. 2:**



**INTERROGATORY NO. 3:**

  Please state in chronological order each railroad by which you have been employed and provide the following information:

  (a)  The date on which you were hired by <u>each</u> railroad;

  (b)  The date on which your service with <u>each</u> railroad terminated;

  (c)  Your craft, position, or occupation with <u>each</u> railroad;

  (d)  The geographical location of your employment with <u>each</u> railroad;

  (e)  Hours worked per day at <u>each</u> railroad;

  (f)  Days worked per week at <u>each</u> railroad;

  (g)  Months worked per year at <u>each</u> railroad; and

(h)     The full name of all of your supervisors during <u>each</u> period of railroad employment.

**ANSWER NO. 3:**

**INTERROGATORY NO. 4:**

For <u>each</u> railroad employer identified in the immediately preceding interrogatory, describe in

detail any repetitive and/or forceful task performed during the course of your employment, including

in your response the following particulars:

(a)     A description of each task involving repetitive use or exertion of force with your
        fingers, hands, wrists, shoulders, or upper extremities;

(b)     Identify each hand tool and/or power tool used during the course of your
        employment, including the frequency and duration of use, and a detailed description
        of the operation of the tool.

**ANSWER NO. 4:**

**INTERROGATORY NO. 5:**

Please state whether you perform any of the following motions during the course of your

employment duties:

(a)     Bending and/or rotation of your wrists to use hand tools, power equipment, controls,
        or manipulation of parts or materials;

(b)     Grasping hand tools, power equipment, controls, parts or materials with your hands;

(c)     Twisting, screwing, or turning tools or controls with your hands;

(d)     Pressing or pushing with the palm or surface of your hands during the use of hand tools, power tools, controls, or manipulation of parts or materials;

(e)     Rotating your wrists during the use of hand tools, power equipment, controls, or manipulation of parts or materials;

(f)     Pounding motions;

(g)     Rubbing motions, and

(h)     Overhead use of your hands or any activity involving prolonged extension/flexion of the shoulder.

## ANSWER NO. 5:

## INTERROGATORY NO. 6:

If your answer to any subpart of the immediately preceding interrogatory is in the affirmative, please provide a description of the task(s) requiring such motion(s) and the frequency and duration of time over which you perform such motion(s) during your work day.

## ANSWER NO. 6:

## INTERROGATORY NO. 7:

Please state whether you have ever been a member of the armed forces of the United

States, of any state, or any other country, or any police force or security agency, whether

voluntary or professional, and if so, please state:

  (a)    The branch of the armed services or police or security force in which you served;

  (b)    Your military service number;

  (c)    The date of enlistment, conscription or hire;

  (d)    Each and every permanent or temporary duty station to which you were assigned,
         giving the location of that duty station;

  (e)    The date upon which such service at each such duty station commenced;

  (f)    The date upon which such service at each such duty station ended;

  (g)    A description of the nature of the duties performed at each such duty station;

  (h)    Each and every armed conflict in which you participated, including each and
         every engagement in which firearms or other military weapons were discharged;

  (i)    Whether you received any training in the use or operation of firearms or other
         military weapons, and if so state:

         i.      the type of firearms involved;

         ii.     the number of weeks of such training;

         iii.    the number of training sessions per week; and

         iv.     the period of time per session that you used or were present during the use

                 of firearms;

  (j)    Whether you otherwise had occasion to personally discharge a firearm or any
         other explosive device during his service in an armed force, police force or
         security force, giving the approximate number of occasions in which you did so
         and describing the type of firearm or other explosive device discharged, or was
         present during times a firearm was discharged, and if so, whether ear protectors

were worn at any time;

(k)     Whether you were required as a part of your duty to use or be present during the use of mechanical tools or equipment which were powered by electricity, fossil fuels, compressed air, hydraulic systems or steam and if you did use such equipment or was present during such use, state with respect to each instance:

     i.      the type of equipment involved;

     ii.      the number of weeks you used or were present during the use of such equipment; and

     iii.      the number of hours per week you used or were present during the use of

       such equipment;

(l)     Whether you sustained any injury or wound of any kind, either in battle, on station, in training or otherwise and completely describe the nature of the wound or injury and any medical treatment including drugs, if any, used in such treatment; and

(m)     Your date of discharge and type of discharged received.

## ANSWER NO. 7:

## INTERROGATORY NO. 8:

Please state whether you, at any time, wore or wear any kind of hearing or masking device on or about your ears, and if so please state:

(a)     When such device was first used;

(b)     At whose suggestion;

(c)     Who paid for the device; and

    (d)     How frequently you wear such device.

## ANSWER NO. 8:

## INTERROGATORY NO. 9:

    Please state when you first learned, believed, became aware of or realized that you had been injured (sustained a hearing loss), and that the injury was work related and as to same please also state:

    (a)     How you first learned, believed, became aware of or realized same; and

    (b)     Where you first learned, believed, became aware of or realized same.

## ANSWER NO. 9:

## INTERROGATORY NO. 10:

    Have you ever made any complaints to your supervisors and/or union representatives about the tools and/or equipment you use in performing your employment duties, working condition, or work methods and/or complaints about noise levels?  If so, please state the following particulars:

    (a)     The nature of the complaint;

    (b)     The date on which each such complaint was made;

    (c)     The identity of the person to whom such complaint was made;

    (d)     Whether such complaint was oral or in writing; and

(e)     If such complaint was in writing, the custodian of the written complaint.

**ANSWER NO. 10:**

**INTERROGATORY NO. 11:**

Please state whether you engage in or have engaged in the past in the following activities:

(a)     Knitting or crocheting;

(b)     Sewing or upholstering;

(c)     Auto or motorcycle mechanics detailing;

(d)     Gardening, farming, or yard work, including in your response any hand tools and/or power equipment used during such activities;

(e)     The use of hand or power tools for purposes of home maintenance or improvement;

(f)     Painting, including home maintenance;

(g)     Fine-assembly hobbies, including modeling, electronics, crafts, fly-tying, clock or watch repair or other fine assembly work involving manipulation of the fingers, hands, shoulders, or wrists repetitively, with or without the assistance of small tools;

(h)     Typing and/or computer operation;

(i)     Bowling;

(j)     Golf;

(k)     Tennis;

(l)     Bicycling;

(m)     Racquetball;

(n)     Baseball or softball;

    (o)      Archery;

    (p)      Skiing;

    (q)      Exercise involving weight lifting, push-ups, pull-ups, rowing, swimming; and

    (r)      Musical instruments.

**ANSWER NO. 11:**



**INTERROGATORY NO. 12**

Please state any non-occupational activity not identified in your answer to the immediately preceding interrogatory that requires repetitive motions using the fingers, hands, wrists, shoulders, or upper extremities; exposes you to continuous vibration; or requires the exertion of force with your fingers, hands, wrists or shoulders.

**ANSWER NO. 12:**



**INTERROGATORY NO. 13:**

Please state whether you now have or have had at any time during the past the following medical conditions:

    (a)      Diabetes;

    (b)      Arthritis;

    (c)      Thyroid dysfunction;

    (d)      Gout;

9

(e)     Neck injury;

(f)     Spinal injury;

(g)     Calcium deposits, tumors, cysts, or broken or displaced bones in the fingers, hands, wrists, or shoulders;

(h)     Obesity;

(i)     Hemodialysis/Kidney Disease;

(j)     Alcoholism;

(k)     Vascular disease;

(l)     Amyloidosis;

(m)     Hemophilia;

(n)     Prior surgery to the fingers, hands, wrists, or shoulders;

(o)     Liver Disease;

(p)     Use hormone supplements;

(q)     Dizziness or blurred vision;

(r)     Headaches;

(s)     Ear infections;

(t)     Ringing in one or both ears;

(u)     Measles, mumps and/or chicken pox; and/or

(v)     Tinnitus.

**ANSWER NO. 13:**

**INTERROGATORY NO. 14:**

Please state whether you have ever sustained any traumatic injury, including a burn, laceration, contusion, broken or displaced bone, crush injury, or amputation, to your fingers, hands, wrists or shoulders, or any injury to ears or head. If so, please provide the following particulars:

    (a)    The date upon which each such injury was sustained;

    (b)    The particular body part injured;

    (c)    The cause of such injury;

    (d)    A complete description of the nature and extent of such injury;

    (e)    Whether you sought medical treatment as a result thereof;

    (f)    The date of any such treatment;

    (g)    The nature of any such treatment;

    (h)    The name and address of any physician and/or institution providing such treatment;

    (i)    Whether any diagnostic tests were performed, and if so, the nature of such tests and the results thereof;

    (j)    The name and address of any physician or institution performing diagnostic tests;

    (k)    Whether surgery was required in the treatment of such injuries, and if so, the name and address of the physician who performed such surgery and the name and address of the institution at which such surgery was performed; and

    (l)    The residual effects, if any, of such injury.

**ANSWER NO. 14:**

**INTERROGATORY NO. 15:**

Have you ever had an audiometric test, and if so, please state:

(a)    When you were administered the audiometric test;

(b)    Where you were the audiometric test;

(c)    By whom you were administered the audiometric test; and

(d)    The results of such testing.

**ANSWER NO. 15:**

**INTERROGATORY NO. 16:**

Please state whether you are right-handed or left-handed.

**ANSWER NO. 16:**

**INTERROGATORY NO. 17:**

Please state whether you suffer from any of the following symptoms:

(a)    While operating power tools or using hand tools, fingers turn white or lose sensation;

(b)    Numbness in your fingers, hands, wrists, or shoulders;

(c)    Tingling sensation in your fingers, hands, wrists, or shoulders;

(d)    Nocturnal awakening by numbness, pain or tingling;

(e)    Prickling sensation in your fingers, hands, wrists, or shoulders;

(f)    Burning sensation in your fingers, hands, wrists, or shoulders;

(g)    Aching sensation in your fingers, hands, wrists, or shoulders;

(h)    Pain in your fingers, hands, wrists, or shoulders;

(i)    Inability to distinguish hot from cold with your fingers or hands;

(j)    Loss of manual dexterity;

(k)    Decreased grip or turning strength;

(l)    Ringing in one or both ears;

(m)    Pain in one or both ears;

(n)    Bleeding or discharge from one or both ears;

(o)    Dizziness; and/or

(p)    Deafness.

**ANSWER NO. 17:**

**INTERROGATORY NO. 18:**

If your answer to any subpart of the immediately preceding interrogatory is in the affirmative, please provide the following particulars for each symptom from which you suffer or have suffered:

(a)    The body part(s) effected;

(b)    Factors that aggravate your symptoms;

(c)    Whether you experience your symptoms constantly or intermittently;

13

(d)    Whether any of your symptom(s) radiate into your forearms, elbows, arms, shoulders, or neck, and if so, please describe the extent to which your symptom(s) radiate to other areas of your body; and

(e)    The onset date of such symptom(s).

**ANSWER NO. 18:**


**INTERROGATORY NO. 19:**

Please state whether any physician, health care professional, or <u>any</u> other person has advised you that you have carpal tunnel syndrome and/or a nerve entrapment syndrome and/or a repetitive stress injury and/or a cumulative trauma disorder and/or hearing loss? If so, please provide the following particulars:

(a)    The identity and address of any such physician, health care professional, or other person;

(b)    Whether such statement was oral or in writing;

(c)    If such statement was in writing, please provide the present custodian of such writing; and

(d)    State the content of such oral or written statement.

**ANSWER NO. 19:**


**INTERROGATORY NO. 20:**

Please state whether you have been subjected to nerve conduction studies, electromyography,

14

x-rays, computerized tomography or magnetic resonance imaging relevant to the condition alleged in your Complaint. If so, please identify the physician or institution administering such testing and provide the address of the physician or institution and the dates on which such testing was conducted.

**ANSWER NO. 20:**

**INTERROGATORY NO. 21:**

Please state whether any physician or other health care professional has recommended that you undergo any surgical procedure(s) in the future in an attempt to cure or alleviate your condition(s). If so, please state the following particulars:

    (a)      The identity and address of the person(s) recommending the surgery;

    (b)      The probable date(s) on which you will undergo the surgery;

    (c)      The estimated cost of the surgery;

    (d)      The time, if any, that you expect to be absent from your employment; and

    (e)      The nature of the surgery recommended.

**ANSWER NO. 21:**

**INTERROGATORY NO. 22:**

Please state whether you have undergone any surgery in an attempt to cure or alleviate carpal tunnel syndrome and/or a nerve entrapment syndrome and/or a repetitive strain injury and/or a

15

cumulative trauma disorder and/or hearing loss. If so, please provide the following particulars:

    (a)    The body part(s) on which surgery was performed;

    (b)    The date on which the surgery was performed;

    (c)    The identity of the surgeon(s);

    (d)    Identify the health care institution at which your surgery or surgeries were performed, including the address of the institution;

    (e)    Whether the surgery relieved your symptoms;

    (f)    Whether any of your symptoms have reoccurred subsequent to any surgery; and

    (g)    Whether you have experienced any post-surgical complications of any nature whatsoever and if so, the details of your complications.

**ANSWER NO. 22:**


**INTERROGATORY NO. 23:**

Please identify your present family physician and any former family physician with whom you have consulted during your adult life and provide a current address for each.

**ANSWER NO. 23:**


**INTERROGATORY NO. 24:**

Please disclose the existence of all persons and produce all documents forthwith required by the local rules of Civil Procedure.

**ANSWER NO. 24:**

16

**INTERROGATORY NO. 25:**

Please describe with particularity those injuries that you are making a claim for in your Complaint, describing in detail the body part(s) involved and symptoms you allege were caused by Defendants.

**ANSWER NO. 25:**

**INTERROGATORY NO. 26:**

Do you contend your injury was caused by a single or traumatic incident of incidents? If so, please described such incident(s) by date, time and location; give a brief description of how the incident(s) occurred and identify by name, and title all witnesses to such incident(s).

**ANSWER NO. 26:**

**INTERROGATORY NO. 27:**

Please state whether you have lost any earnings or contend that your future earning capacity is impaired as a result of the condition(s) of which you complain in your Complaint. If so, please state the amount of your loss and the period over which you have lost or will lose earnings as a result of your condition.

**ANSWER NO. 27:**

17

**INTERROGATORY NO. 28:**

To the extent Plaintiff is asserting a claim for lost wages, please provide a copy of Plaintiff's Federal income tax returns for each and every year in which Plaintiff claims lost wages resulting from the injuries alleged in the above-captioned matter.

**ANSWER NO. 28:**

**INTERROGATORY NO. 29:**

If Plaintiff has applied to the Railroad Retirement Board (the Board) for any benefits whatsoever as a result of Plaintiff's alleged injuries, please provide a copy of said application, including all supporting documentation, and any and all documents supplied to Plaintiff by the Board relevant to its determination.

**ANSWER NO. 29:**

**INTERROGATORY NO. 30:**

Please produce a copy of any flyer, advertisement, letter or any other solicitation for any screening, testing or presentation that Plaintiff attended sponsored by any law firm or union for the types of injuries for which Plaintiff is making a claim.

**ANSWER NO. 30:**

Respectfully submitted,

CONSOLIDATED RAIL CORPORATION and
CSX TRANSPORTATION, INC.,
by their attorneys

_Lori A. Wirkus_

Michael B. Flynn                    BBO # 559023
Lori A. Wirkus                      BBO #635525
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA 02169
(617) 773-5500

Dated: <u>November 30, 2005</u>
G:\F & A\CASE FILES\CSX OCCUPATIONAL\CARPAL TUNNEL\CROWTHER\pleadings\Ints to pl.11.30.05.doc

CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing
pleading on all parties by hand/mail delivering same, to
all counsel of record.
Signed under the pains and penalties of perjury.

DATED        _Lori A. Wirkus_
             11/30/05

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEOFFREY CROWTHER | CIVIL ACTION |
| Plaintiff | |
| | NO.  05-30140-MAP |
| vs. | |
| CONSOLIDATED RAIL CORPORATION, et al. | |
| Defendants | |

## PLAINTIFF'S ANSWERS TO
## DEFENDANTS' INTERROGATORIES

Plaintiff, by and through his undersigned attorney, hereby answers Defendants' Interrogatories as follows:

1.    Geoffrey Crowther
      119 Massasoit Street
      Northampton, MA 01060
      DOB: 5/7/51
      SS#: 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
      Height: 6'1"
      Weight: 210 lbs.

2.    Married to Sally Crowther from 1976 to present.

3.    Plaintiff began his railroad employment in 1975 with Penn Central, and has been employed with its successors Conrail and CSX, respectively, ever since.  Plaintiff's craft was/is trackman/welder/track foreman in the maintenance of way department, covering territory in the New England Division.  Plaintiff works full-time, 8-10 hours per day, 4-5 days per week, not including overtime.  Plaintiff's current supervisor is Roy Squires.  Past supervisors have included Mike Wotaj and Dick Ross.  See Plaintiff's railroad employment files in Defendants' possession.

4.    Plaintiff developed occupational injuries to his upper extremities, as further described in Interrogatory answers below, from performing everyday job functions on the railroad.  As a trackman/welder/track foeman, Plaintiff's tasks included, but were not limited to, the repair and maintenance of railroad track, utilizing certain tools and equipment such as tamping guns, grinders,

impact wrenches, pry bars, hammers, etc. These tasks required Plaintiff to do an extreme amount of repetitive work, as well as using force, and working in awkward postures. Plaintiff was also required to lift heavy objects and was exposed to vibration. There is no one specific date or location of injury. See Plaintiff's railroad employment files in Defendants' possession.

5.    See answers to Interrogatory Nos. 3 & 4 above.

6.    See answers to Interrogatory Nos. 3 & 4 above.

7.    Plaintiff has not served in the military.

8.    Plaintiff has been provided with hearing protection by the railroad, which he wears on the job. Outside the railroad, Plaintiff wears hearing protection whenever he needs to use a chain saw for yard work.

9.    Plaintiff first realized that he had sustained a hearing loss injury, and that noise exposure was the cause of the injury, on or about November 6, 2002. See copy of Plaintiff's audiogram/medical reports previously provided.

10.    Plaintiff is presently unable to recall ever making any formal complaints to Defendants in regard to his work environment, however plaintiff believes he made oral complaints during general conversations with his co-workers and/or supervisors regarding noise at work and/or lack of manpower, etc.

11.    In the past, Plaintiff has participated in baseball/softball and football, but these were back when he was in school. Plaintiff also enjoyed cycling in the past, but has not done so in over 10 years. Presently, Plaintiff's activities include yard work such as mowing his lawn, walking his dog, swimming, golfing and fishing.

12.    See answer to Interrogatory No. 11 above.

13.    Plaintiff believes he had chicken pox as a child. He recalls he sustained a right shoulder injury while playing high school football, which required surgery. In approximately 1977, Plaintiff sustained an injury to his back while working at the railroad when he fell off a boom truck. Plaintiff recalls he settled a claim for this injury. Plaintiff recalls injuring his left pinky finger sometime in the 1980s when he tripped and fell. In approximately the mid-1980s, Plaintiff sustained an injury to his right knee while working at the railroad when he was struck with a track jack. Plaintiff recalls he settled a claim for this injury. In approximately the late 1980s, Plaintiff sustained an injury to his forehead while working at the railroad when he was struck by a truck door. Plaintiff recalls he settled a claim for this injury. In approximately 2002, Plaintiff sustained further injury to his back while working at the railroad when he slipped and fell on ice/snow. Plaintiff believes he has been diagnosed with

some arthritis in his right knee. Plaintiff currently experiences ringing in his ears.

14.    See answer to Interrogatory No 13 above.

15.    See copy of Plaintiff's audiogram/medical reports dated November 6, 2002, previously provided.

16.    Plaintiff is right-handed.

17.    In regard to his hearing loss injury, Plaintiff's symptoms include ringing in his ears and occasional loss of equilibrium. In regard to his upper extremity injuries, Plaintiff's symptoms include numbness, tingling and discomfort in his hands, wrists, arms and shoulder. Plaintiff has also experienced pain in his left thumb and his neck. Plaintiff's symptoms wake him from sleep at night.

18.    See answers to Interrogatory Nos. 17 above & 19 below.

19.    On or about June 19, 2002, Plaintiff was diagnosed with bilateral carpal tunnel syndrome. See copy of Plaintiff's medical record/report previously provided. Plaintiff consulted his primary physician Dr. Baustin of Hadley, Massachusetts, in regard to his injuries. Dr. Baustin referred Plaintiff to a hand specialist. Plaintiff believes his name was Dr. Roman. Dr. Roman diagnosed Plaintiff with bilateral carpal tunnel syndrome as well as injuries to his shoulder. Plaintiff was instructed on certain physical therapy exercises and was prescribed medication. Plaintiff's symptoms seemed to abate at that time. In approximately 2005, Plaintiff's symptoms in his hands, wrists, arms and shoulder returned. Plaintiff further noted pain and discomfort in his left thumb and his neck. Plaintiff consulted orthopedic surgeon Dr. Wenner of Springfield, Massachusetts. Dr. Wenner diagnosed Plaintiff with injuries to his left thumb and his neck. Copies of additional medical records/reports to be provided.

20.    See answer to Interrogatory No. 19 above.

21.    Dr. Wenner has discussed the possibility of cervical surgery, although Plaintiff has not undergone surgery to date.

22.    See answer to Interrogatory No. 21 above.

23.    Plaintiff's primary physician is Dr. Baustin of Hadley, Massachusetts.

24.    Witnesses in regard to this matter include plaintiff's railroad co-workers and/or supervisors, as well as plaintiff's treating physicians. See copies of Plaintiff's medical records/reports previously provided. Copies of additional medical records/reports to be provided. Plaintiff further intends to call certain

corporate officers of the Defendants to testify in this matter on the issue of liability, as well as ergonomic expert, Dr. Michael Shinnick. Expert witness disclosures to be provided in accordance with the Court's deadlines.

25.    On or about June 19, 2002, Plaintiff was diagnosed with bilateral carpal tunnel syndrome. On or about November 6, 2002, Plaintiff was diagnosed with hearing loss. See also answers to Interrogatory Nos. 4, 9, 17, 19 & 21 above. See copies of Plaintiff's medical records/reports previously provided. Copies of additional medical records/reports to be provided.

26.    Plaintiff's injuries were not the result of a single traumatic incident. There is no one specific date or location of injury.

27.    Plaintiff has not lost any earnings to date as a result of his injuries alleged herein. However, a loss of earnings claim is expected to arise in the future should Plaintiff undergo surgery for his injuries.

28.    Copies of Plaintiff's income tax returns to be provided should a wage loss claim arise in the future in this matter.

29.    Plaintiff has not applied for any sickness and/or disability benefits to date as a result of his injuries alleged herein.

30.    None that Plaintiff is presently able to recall and/or is presently in Plaintiff's possession.


    Plaintiff reserves the right to amend or supplement Plaintiff's Answers to Defendants' Interrogatories prior to trial.



Dated: 6/27/06                    By:_____
                                  THOMAS J. JOYCE, III, ESQUIRE
                                  900 Centerton Road
                                  Mount Laurel, NJ 08054
                                  (856) 914-0220
                                  Attorney for Plaintiff

# EXHIBIT "E"

▣ FILE COPY

# FLYNN & ASSOCIATES, P.C.

### ATTORNEYS AT LAW

MICHAEL B. FLYNN*
RICHARD A. DAVIDSON, JR.
LORI A. WIRKUS⁺
JOHN E. YOUNG, IV
VALERIE A. MURPHY

*also admitted in NY
⁺also admitted in CT

OF COUNSEL:
DURKIN, McDONNELL,
CLIFTON & O'DONNELL

400 CROWN COLONY DRIVE
SUITE 200
QUINCY, MASSACHUSETTS  02169
TELEPHONE (617)773-5500
FACSIMILE (617)773-5510
E-MAIL: *flynnlaw@flynnassoc.com*
WEBSITE: *www.flynnassoc.com*

BOSTON OFFICE:
160 STATE STREET
EIGHTH FLOOR
BOSTON, MA  02109

DETROIT OFFICE:
PENOBSCOT BUILDING
645 GRISWOLD STREET, SUITE 3253
DETROIT, MI 48226
TEL: (313)963-3033
FAX: (313)963-3011

May 15, 2006

Thomas J. Joyce, III, Esq.
Hannon & Joyce
The Public Ledger Building, Suite 1000
150 S. Independence Mall West
Philadelphia, PA 19106

RE:    Crowther vs. Consolidated Rail Corporation, et al.
       U.S.D.C., Dist. of Mass. (Springfield), C.A. Docket No. 05-30140-MAP

Dear Tom:

Enclosed please find the *Notice of Deposition* of the plaintiff, Geoffrey Crowther, for June 29, 2006 at 10:00. Please let me know if this date is inconvenient for either you or your client.

Also, would you kindly produce, upon receipt of this letter, your client's answers to the defendants' interrogatories and requests for production of documents. They were served on November 30, 2005, and to date, we have received no response.

Thank you for your attention to this matter.

Sincerely,

Lori A. Wirkus

Encl.
cc:    Michael B. Flynn, Esq.
       Michael J. McDevitt, Esq. (w/encl.)

G:\F & A\CASE FILES\CSX OCCUPATIONAL\CARPAL TUNNEL\CROWTHER\correspondence\attorney\Joyce w.notice of depo.5.15.06.doc

# EXHIBIT "F"

☐FILE COPY



# HANNON & JOYCE
LAW OFFICES

REPLY TO
900 CENTERTON ROAD
MOUNT LAUREL, NJ 08054

(856) 914-0220
(856) 914-0428 (FAX)

PUBLIC LEDGER BUILDING, SUITE 1000
150 SOUTH INDEPEDENCE MALL WEST
PHILADELPHIA, PENNSYLVANIA 19106-3413
(215) 446-4460  ~  (888) 222-FELA (US)  –  (215) 446-4479 (FAX)
hjmail@hannonandjoyce.com



June 26, 2006

<u>Via Fax (617) 773-5510 & First Class Mail</u>

Lori A. Wirkus, Esquire
Flynn & Associates
400 Crown Colony Drive, Suite 200
Quincy, MA 02169

  **Re:**   **Geoffrey Crowther vs. CSX Transportation, Inc., et al.**
      **USDC District of Massachusetts No. 05-30140-MAP**

Dear Ms. Wirkus:

    Please be advised that I expect to forward plaintiff's completed discovery responses to you in the very near future. Please be sure to contact me directly upon receipt of same so that we might reschedule plaintiff's deposition testimony on a mutually convenient date. In the meantime, enclosed here please find copies of plaintiff's medical records/reports in our possession regarding plaintiff's claims for your files.

    If you should have any questions or concerns, please don't hesitate to contact me. Thank you for your continuing courtesy and consideration.

           Very truly yours,

           ELIZABETH L. SCHMIDT

ELS/s
Enclosures

**MARK A. WOODWARD, M.D.**
209 E. Atlantic Avenue
Haddon Heights, NJ 08035

Electrodiagnostic Report: Geoffrey Crowther

Date: June 19, 2002

MEDICAL HISTORY: Mr. Crowther is a 51 year old right handed welding foreman who has been employed by the railroad since 1975. This individual has noted numbness, and tingling his hands bilaterally.

FUNCTIONAL PROFILE: This individual frequently wears gloves during work, which requires the repetitive use of tamping guns, grinders, and other equipment and tools which have vibration and require force and awkward postures. No history of diabetes mellitus, thyroid disease, vascular disease, or local fractures noted. This individual has been exposed to stresses that are known to cause carpal tunnel syndrome.

NERVE CONDUCTION STUDIES SUMMARY:

| Nerve | Distal Motor Latency (msec) | Amplitude (mV) | Conduction Velocity (m/sec) | Distal sensory Latency (msec) |
|---|---|---|---|---|
| (L) Median | 4.3 | 7.7 | 57.5 | 3.7 |
| (R) Median | 3.5 | 6.2 | 57.5 | 3.7 |
| Normal | <=4.2 | >=4.5 | >=48.0 | <=3.5 |

- Nerve conduction studies were performed utilizing methods outlined on methods addendum.
- Left ulnar distal sensory latency:   3.4   Normal (<= 4.2)
- Right ulnar distal sensory latency:   3.2   Normal (<= 4.2)

IMPRESSION:

**Moderate carpal tunnel syndrome involving the left median nerve.**
**Mild carpal tunnel syndrome involving the right median nerve.**

CONCLUSION: When correlated with the patient's work history, functional profile and nerve conduction studies, it is my opinion, with a reasonable degree of medical certainty, that this individual has carpal tunnel syndrome. Based upon available information, the condition is directly related to this individual's work activities with the railroad. The options for this patient's management include splinting, anti-inflammatory medication, steroid injection and surgical release. If the patient does not respond to conservative treatment, this individual may ultimately benefit from surgical intervention.

Mark A. Woodward, M.D.

**Mark A. Woodward, M.D**
209 E. Atlantic Ave.
Haddon Heights, NJ 08035

| Patient: | CROWTHER, GEOFFREY | Test Date: | 06/19/02 |
|---|---|---|---|
| Sex: | Male | | |
| I.D.#: | 5-7-51 | | |

## Motor Nerve Study

**Left Median Nerve**

| Rec Site: APB<br>STIM SITE | Lat (ms) | Amp (mV) | Dist (mm) | C.V. (m/s) |
|---|---|---|---|---|
| Wrist | 4.3 | 7.7 | | |
| Elbow | 8.3 | 7.5 | 230 | 57.5 |

**Right Median Nerve**

| Rec Site: APB<br>STIM SITE | Lat (ms) | Amp (mV) | Dist (mm) | C.V. (m/s) |
|---|---|---|---|---|
| Wrist | 3.5 | 6.2 | | |
| Elbow | 7.5 | 5.8 | 230 | 57.5 |

**Left Ulnar Nerve**

| Rec Site: ADM<br>STIM SITE | Lat (ms) | Amp (mV) | Dist (mm) | C.V. (m/s) |
|---|---|---|---|---|
| Wrist | 2.8 | 10.2 | | |
| B.Elbow | 7.8 | 9.5 | 265 | 53.0 |
| A.Elbow | 10.5 | 9.0 | 155 | 58.1 |

**Right Ulnar Nerve**

| Rec Site: ADM<br>STIM SITE | Lat (ms) | Amp (mV) | Dist (mm) | C.V. (m/s) |
|---|---|---|---|---|
| Wrist | 2.7 | 8.5 | | |
| B.Elbow | 7.0 | 8.5 | 270 | 62.3 |
| A.Elbow | 10.2 | 8.7 | 165 | 52.1 |

## Sensory Nerve Study

**Left Median Nerve**

| Stim Site: Wrist<br>REC SITE | Lat (ms) | Pk LAT (ms) | Amp (uV) |
|---|---|---|---|
| Index | 3.7 | 3.7 | 22.3 |

**Right Median Nerve**

| Stim Site: Wrist<br>REC SITE | Lat (ms) | Pk LAT (ms) | Amp (uV) |
|---|---|---|---|
| Index | 3.7 | 3.7 | 10.3 |

| Patient: | CROWTHER, GEOFFREY | Test Date: | 06/19/02 |
|---|---|---|---|
| I.D.#: | 5-7-51 | | |

## Sensory Nerve Study

**Left Ulnar Nerve**
Stim Site: Wrist
REC SITE

| | Lat (ms) | Pk LAT (ms) | Amp (uV) |
|---|---|---|---|
| 5th dig | 3.4 | 3.4 | 16.3 |

**Right Ulnar Nerve**
Stim Site: Wrist
REC SITE

| | Lat (ms) | Pk LAT (ms) | Amp (uV) |
|---|---|---|---|
| 5th dig | 3.2 | 3.2 | 19.3 |

# EXHIBIT "G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

GEOFFREY CROWTHER

Plaintiff

vs.

CSX TRANSPORTATION, et al.

Defendants

CIVIL ACTION

NO.  05-30140-MAP

---

## PLAINTIFF'S EXPERT WITNESS DISCLOSURES

Plaintiff hereby submits the following expert witness disclosures pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure.  Plaintiff specifically reserves the right to call additional witnesses and to otherwise supplement these disclosures as further information becomes available.

1.    Steven M. Wenner, M.D.
New England Orthopedic Surgeons
300 Birnie Avenue, Suite 201
Springfield, MA 01107
Dr. Wenner, Plaintiff's treating physician and medical expert, to testify as to Plaintiff's medical history, diagnosis of injuries sustained, cause of Plaintiff's injuries, treatment and prognosis.  A copy of Dr. Wenner's CV to be provided.

2.    Michael D. Shinnick, Ed.D.
Dynamics Research Group
Research Park, Suite 201
670 Sunshine Farm Lane
Blacksburg, VA 24060
Dr. Shinnick, Plaintiff's ergonomic expert, to testify as to risk factors at the railroad, foreseeability and liability of Defendant railroad.  A copy of Dr. Shinnick's CV is attached hereto.

3.　　Allan Baustin, M.D.
　　　Hadley Family Practice
　　　234 Russell Street, Suite 7
　　　Hadley, MA 01035
　　　Dr. Baustin, Plaintiff's treating physician and medical expert, to testify as
　　　to Plaintiff's medical history, diagnosis of injuries sustained, cause of
　　　Plaintiff's injuries, treatment and prognosis. A copy of Dr. Baustin's
　　　CV to be provided.

4.　　Mark A. Woodward, M.D.
　　　UMD of New Jersey
　　　42 E. Laurel Road, Suite 1100A
　　　Stratford, NJ 08084
　　　Dr. Woodward, Plaintiff's diagnosing physician and medical expert, to
　　　testify as to Plaintiff's medical history, diagnosis of injuries sustained,
　　　cause of Plaintiff's injuries, and prognosis. A copy of Dr. Woodward's
　　　CV is attached hereto.

5.　　Tomma Henckel, M.A., CCC-A
　　　University of Massachusetts
　　　Center for Language, Speech & Hearing
　　　17 Arnold House
　　　715 N. Pleasant Street
　　　Amherst, MA 01003
　　　Ms. Henckel, Plaintiff's diagnosing audiologist and medical expert, to
　　　testify as to Plaintiff's medical history, diagnosis of injuries sustained,
　　　cause of Plaintiff's injuries, treatment and prognosis. A copy of Ms.
　　　Henckel's CV to be provided.

6.　　All individuals identified in Defendant's disclosures.


THE LAW OFFICE OF THOMAS J. JOYCE, III


Dated: 7/26/06　　　　　　　BY: _Thomas J Joyce III/e_
　　　　　　　　　　　　　　THOMAS J. JOYCE, III, ESQUIRE
　　　　　　　　　　　　　　900 Centerton Road
　　　　　　　　　　　　　　Mount Laurel, NJ 08054
　　　　　　　　　　　　　　(856) 914-0220
　　　　　　　　　　　　　　Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GEOFFREY CROWTHER

          Plaintiff

    vs.

CSX TRANSPORTATION, et al.

          Defendants

CIVIL ACTION

NO. 05-30140-MAP

### CERTIFICATE OF SERVICE

    I, THOMAS J. JOYCE, III, hereby certify that I forwarded a true and correct copy

of Plaintiff's Expert Witness Disclosures to Lori A. Wirkus, Esquire, attorney for

Defendants, at Flynn & Associates, 400 Crown Colony Drive, Suite 200, Quincy, MA

02169, by depositing same in United States Mail, this 26th day of July 2006.

                                _____

                                THOMAS J. JOYCE, III, ESQUIRE

# Dynamics Research Group

**Dr. Michael D. Shinnick, Director**

HOME - CURRICULUM VITAE - TESTIMONY LIST -TASK MASTER - RECENT PUBLICATIONS -
PRESENTATIONS - COMPANIES/CONSUMERS - DRG HISTORY - MODAPTS - PHOTO ALBUM

## Curriculum Vitae (Current to July 2002)

## Michael D. Shinnick

**OFFICE ADDRESS:**

Dynamics Research Group
Research Park, Suite 201
670 Sunshine Farm Lane
Blacksburg, Virginia 24060

Tel. (540) 951-1950
Fax (540) 951-0519
Mobile (540) 230-5912
E-Mail: DRG@Drshinnick.com

EDUCATION
PROFESSIONAL CERTIFICATIONS
PROFESSIONAL WORK EXPERIENCE
PROFESSIONAL SERVICES
CONSULTING AND TRAINING
GRANTS AND CONTRACTS
HONORS AND AWARDS
PUBLICATIONS
TRAINING/RESOURCE MANUALS
PRESENTATIONS & SEMINARS 96/01
OTHER EXPERIENCES, COMPETENCIES, AND ACTIVITIES

## EDUCATION

Post Doctoral - Auburn University, Industrial Engineering. (Work Measurement and
Ergonomics) 1979-1981

Ed.D. Auburn University, 1977. College of Education, Department of Rehabilitation and
Special Education. (Specializing in Service Systems for Individuals with Severe
Handicapping Conditions)

M.Ed. Auburn University, 1971. (Rehabilitation Counseling and Psychology)

B.S. Florida State University, 1968. (School of Business)

## PROFESSIONAL CERTIFICATIONS

Human Factors and Ergonomics Society, Member 2002 to 2007.

Certified Member of The American Railway Engineering and Maintenance-of-Way
Association

Certified Vocational Evaluator, Commission on Certification of Work Adjustment and
Vocational Evaluation, 1984 to 2005, Certificate No. 00844.

Certified Work Adjustment Specialist, Commission Certification of Work Adjustment and Vocational Evaluation, 1984 to 2005, Certificate No. 00324.

Certified Rehabilitation Provider, Board of Professional Counselors, Department of Health Professionals, Commonwealth of Virginia, 1995. License NO:0715002936

Board Certified Work Measurement and Ergonomics Trainer, International MODAPTS Association, 1990 to 2005, awarded for five year periods.

The American Board of Forensic Examiners, Diplomate: Board Certified Forensic Examiner, Specialty: Ergonomics, Work Injury Management, Rehabilitation. 1994 to 2003. I.D. No:00567

Registered Vocational Expert, Social Security Administration, Bureau of Hearings and Appeals, 1980 to present.

Senior Disability Analyst and Diplomat, American Board of Disability Analysis, 1999 - 2004, Diploma Certificate No: 6319-99.

## PROFESSIONAL WORK EXPERIENCE

Director, Dynamics Research Group, 1981 to Present.

> Productivity, work injury & disability management, ergonomics, both office and production environments, gain sharing, and work measurement consultation with business, industry, financial institutions and service agencies; ergotecture/ergonomics software systems development and marketing; federal contracting; staff development training; employee assistance programming; assessment of residual employability; transferability of skills analysis; employability access; expert witness reporting; case management; life care plans for individuals with catastrophic injuries; functional capacity evaluation; and maritime services.

Associate Professor of Rehabilitation and Director of the Rehabilitation Continuing Education Program, Dept. of Rehabilitation and Special Education, Auburn University, 1983-1986.

> Director of the Rehabilitation Facility Administration Project, the Vocational Evaluation and Work Adjustment Project, and the State Department of Education Special Needs Assessment Project. Graduate faculty member and coordinator of Rehabilitation Extension and Continuing Education activities. Graduate instruction in rehabilitation and procurement of extramural funds. Manager of budgets (averaging $500,000 annually), direct staff, administration of grants and contracts, and coordinator of services to vocational rehabilitation agencies in eight southeastern states.

Assistant Professor and Director of the Rehabilitation Administration Program, Dept. of Rehabilitation, College of Education, Auburn University, 1978-1983.

> Direct staff in the teaching, development of, and research in the area of rehabilitation facility administration. Direct masters and doctoral committees, conduct research, develop course manuals, teach pre-service classes and in-service courses.

Director of Independent Living Project, Auburn University, 1979-1981.

> Direct staff in the development of an Independent Living Resource Manual for the severely

handicapped. Coordinated development of independent living in-service training and a national materials distribution network for the development of programs for the severely handicapped.

**Assistant Professor and Associate Project Director of the Region IV Rehabilitation Facility Training Program, Dept. of Rehabilitation, College of Education, Auburn University, 1977-1978.**

Coordinator of Rehabilitation Management Training Programs; training representative for Vocational Rehabilitation Agencies in Georgia, Florida and Mississippi; assisted in the administrative and funding activities of the training programs for facility personnel, i.e., vocational instructors, production supervisors, vocational adjustment specialists, vocational evaluators, administrators; instructor of graduate and undergraduate students in vocational rehabilitation.

**Extension Associate, Rehabilitation and Special Education Department, Auburn University, 1973-1977.**

Instructed professional rehabilitation facility personnel in techniques of vocational evaluation, work adjustment, and management. Coordinated administration workshops. Assistant project director of the Region IV Rehabilitation Facility Training Program.

**Graduate Research Assistant, Rehabilitation and Special Education Dept., Auburn University, 1973-1975.**

Instructor in vocational evaluation, work adjustment, work injury management, and vocational placement techniques.

**Vocational Evaluator and Work Adjustment Services Coordinator, State of Alabama Dept. of Education, Division of Vocational Rehabilitation at the Achievement Center, Opelika, Alabama, 1971 to 1973.**

Responsible for providing individual and group counseling to rehabilitation clients and developing, organizing and directing the program and staff of the Vocational Rehabilitation Center. The program consisted of vocational evaluation, work adjustment services, work measurement, vocational training and placement.

## PROFESSIONAL SERVICES

Research and Demonstration Site Coordinator for Ergonomics Systems, Bissell Health Care Systems, Lafayette Instruments 1993 to 1995.

Montgomery Regional Hospital & Pulaski Community Hospital Advisory Counsel for Occupational Health and Safety, 1994.

National Association of Forensic Economics, research contributor & member 1993 to 1996.

Pain Management Consortium of Southwest Virginia, Council Member, 1992 to present.

International MODAPTS Association (IMA) Chairman of the Board of Directors and President, IMA holds the English speaking copyrights for the MODAPTS system, Western Michigan University, 1989 to 1992.

International MODAPTS Board - Function as one of the twelve international members of the governing body, Sydney, Australia, 1986 to present.

Editorial Advisory Board - Vocational Evaluation and Work Adjustment Bulletin, 1977 to 1984.

The President's Committee on Employment of People with Disabilities, Washington, D.C., 1981-1985.

Governor's Advisory Council on Facilities and Information Network Development, 1979-1982.

State Department of Education Committee on Handicapped Children Early Childhood Education Program, 1980.

Chairman of the Peer Review Panel for Rehabilitation Facility Administration Grants, R.S.A., H.E.W., Washington, D.C., 1979.

Research Editor of the National Association of Rehabilitation Instructors Bulletin. 1979.

National Rehabilitation Administration Association Accreditation Standards Committee, 1979-1982.

Peer Review Panel for Independent Living Part B Projects. Dept. of Education, Washington, D.C., 1979.

## CONSULTING AND TRAINING

Worked with over 400 community, state and federal agencies as a rehabilitation of the severely handicapped systems expert, ergotecture and ergonomics expert. Services have been provided to business, industry and financial institutions. Internationally, projects have been conducted in New Zealand, Australia, Central America, and the Caribbean Basin. In legal services, over 250 cases have been developed and data presented.

Management, Productivity, and Ergonomics Consultant to over 300 industries, businesses, financial institutions and service agencies including Ford Motor Company, General Motors, Abbot Labs, Brunswick Defense, and the U.S. Department of Justice, Southeast Bank, 1985-2002.

Virginia Department of Rehabilitative Services - Rehabilitation Engineer Consultant, provided assessment, implementation and follow-up for over 200 DRS clients. Services provided included work site accommodation, assistive devise needs, and independent function facilitation, 1995-1999.

Conducted over 90 training programs on work measurement and ergonomics. Participants represented financial, manufacturing, human services, and educational institutions.

Florida Association of Rehabilitation Facilities, Work Injury Management Consultant, 1984-1985.

Australian Department of Rehabilitation, conducted seminars in Vocational Assessment, 1984.

Massey University, Massey, New Zealand, visiting lecturer, 1984.

Alabama State Department of Mental Health. Provided a series of Staff Development Programs for State Institution Staff, 1982.

Georgia Department of Human Resources. Conducted a Series of Methods Analysis and Time Study Workshops, 1981-1983.

Kentucky Bureau for Blind Services, Training Consultant, 1980-1982.

State Department of Education - Handicapped Children Work Activities Training, 1980.

Conducted over 35 workshops on Interpersonal Skills and Communications Training as a consultant to various agencies and organizations, 1977-1990.

Program Development Consultant to Tennessee Blind Services Agency, 1977-83.

Federal Technical Assistance Consultant to Rehabilitation Services Administration, 1976 to present.

Consultant to Cornell University in developing rehabilitation adjustment services programs and in conducting management training, 1973 to 1986.

Consultant to South Carolina University Rehabilitation and Counseling Department's Seminar on Innovations in Work Adjustment. Orangeburg, South Carolina, 1976.

Special Education Consultant to Macon, Russell, and Perry County Boards of Education, 1975-1986.

North Carolina Blind Services Agency, Staff Development, 1975, 1979.

Cornell University's Labor Relations Think Tank on Work Adjustment and Rehabilitation Services, 1975.

Adjunct Instructor to Tuskegee Institute's Drug Abuse Human Services Program, 1975.

Special Education and Gifted Diagnosis Consultant for the Alabama State Department of Education, 1973-1986.

## GRANTS AND CONTRACTS

Since 1973, have secured over six million dollars in contracts and grants for providing training, product development, work measurement, work injury management program development, ergonomic assessment, human factors studies, and OSHA/NIOSH compliance reviews. Specific grants and contracts include:

General Motors, 1990, 1991, 1994; Brunswick Defense, 1990, 1991; Ford Motor Company, 1988 - 2002; Boeing Aircraft Company, 1991, 1992; Bridgestone Tire Company, 1993, 1994; Abbott Laboratories, 1992 -1995; Intermet Foundries, 1990-1993; American College Pathologists, 1992; Federal Bureau of Prisons, 1988 - 1995; Special Needs Development and Training Program, 1985, 1986; Roadway Express, Inc., 1992 - 1999; Virginia Department of Rehabilitative Services, 1994 - 1999; National Industries for the Severely Handicapped, 1988 - 1999; Wabash Magnetics Control Products, 2000 - 2001; Vecta Industries, 2001; Indiana Association of Rehabilitation Facilities, 1990, 2000; Verizon, 2001 - 2002; Bassett Furniture, Co., 2000 - 2002.

Partners of the Americas, - developed an industrial contracting training program for the Rehabilitation Training Center, Guatemala City, Guatemala, 1985, 1995, 1997.

The World Rehabilitation Fund - researched the application of industrial engineering work measurement to vocational rehabilitation. Sidney, Brisbane, and Perth, Australia; Massey University and Hamilton, New Zealand, 1984;

Facility Administration In-service Grant, funded by Rehabilitation Services Administration, 1982 through 1986;

Vocational Evaluation and Work Adjustment In-Service Training, funded by RSA, 1982 through 1986;

The Alabama State Department of Education - training in vocational evaluation, work measurement and work adjustment, 1981 through 1983;

The Alabama State Department of Mental Health - training and consulting in work measurement, 1981;

The Alabama Department of Youth Services - communications training for vocational instructors, 1981;

The Georgia Division of Mental Health and Mental Retardation - work measurement, 1981.

## HONORS AND AWARDS

Director Emeritus, International MODAPTS Association and the International Labour Organization, Geneva, Switzerland, April 1999;

Selected for the Who's Who National Directory Executives and Professionals, 1997;

Recipient of the G. Christopher Heyde Award for international contributions to research in work measurement and work injury assessment. International MODAPTS Association, 1994;

Disability Management & Work Injury Assessment Seminar - program consultant and speaker, Sidney, Australia, 1990;

International MODAPTS Association Chairman & President 1989-91;

United States Representative to Partners of the Americas Employment Congress for Central and South America, Guatemala, 1985.

World Rehabilitation Fund International Exchange of Experts Fellowship, Australia & New Zealand 1984.

## PUBLICATIONS

Garratt, Charles., Garratt, Steven., Shinnick, Michael., TaskMaster 2000, *Gray Owl Software*, Dynamics Research Group, January 2000, TaskMaster Version 3, 2002.

Shinnick, M.D., Lanphear, M.J., An Expert Examines Daubert in the Context of Cumulative Trauma Disorders, Publication www.drshinnick.com.

Wickstrom, Richard J., Shinnick, Michael D., Industrial Standards for the Jamar Physical Agility Test Battery, *Lafayette Instruments and Ergonomics Systems*, Bissell HealthCare 1995.

Garratt, Charles, Shinnick, Michael D., TaskMaster for Windows, *Gray Owl Software*, 1995.

Shinnick, Michael D., Stone, Victoria Jordan, Vocational Aspects of Personal Injury Litigation, *On Science and Technology* - International MODAPTS Association, June 1993.

Shinnick, Michael D., Disability Management: Background, Process, and Aims, International MODAPTS Association, 1992.

Shinnick, Michael D., Stone, Victoria J., Empirical Data Helps to Prove Vocational Loss in Personal Injury Cases, *Lawyers Weekly*, December 1992.

Garratt, Charles, Shinnick, Michael D., TaskMaster - Advanced Software for MODAPTS-based Work Standards, *Gray Owl Software*, 1991.

Shinnick, Michael D., Erwin, Walter E., Work Measurement System Creates Shared Responsibility Among Workers at Ford, *Industrial Engineering*, August 1989, Vol. 21, No. 8.

Shinnick, Michael D., Vocational and Rehabilitation Expert Testimony Objectified Through the Application of Ergotecture, *Lawyer's Weekly*, June 1988, Vol. III, No. 4.

Shinnick, Michael D., and Gerber, Donald L., A Common Language for Analyzing Work, *Journal of Systems Management*, Vol. 36, No. 4, pp. 8-13, 1986.

Black, J., Shinnick, M., Welsh, J., A Work Measurement Approach to Functional Assessment, *Issues Papers: National Forum on Issues in Vocational Assessment*, Materials Development Center, University of Wisconsin-Stout; Menomonie, Wisconsin, 1985.

Shinnick, Michael D., Improving the Effectiveness of Rehabilitation Services Through a Common Language for Practitioners, *Journal of Rehabilitation*, Aug. - Sept., 1985, pp. 33-38.

Shinnick, Michael D., Black, J.B., Decker, Roger S., "A Partnership: Vocational Evaluation and Industrial Engineering." *Vocational Evaluation and Work Adjustment Bulletin*, Vol. 16, No. 1, 1983.

Shinnick, Michael D., Black, J.B., The Application of Industrial Engineering, *Vocational Evaluation, Work Adjustment and Independent Living Services for the Severely Disabled*, Robert Lassiter, Ed. Springfield, IL: Charles Thomas, 1983.

Shinnick, Michael D., Sallenger, Sabra H., Burdg, Nancy B., "Guidelines for the Development of Independent Living Services in Rehabilitation Facilities." *Vocational Evaluation, Work Adjustment and Independent Living for Severely Disabled*, Robert Lassiter, Ed. Springfield, IL: Charles Thomas, 1983.

Shinnick, M.D., Sallenger-Hoffman, S., Innovations in Vocational Evaluation and Work Adjustment - Independent Living: A Resource Manual, *Vocational Evaluation and Work Adjustment Bulletin*, Vol. 14, No. 1, Spring 1981.

Carter, J., Shinnick, M.D., McDaniel, R.S., The Impact of In-Service Training in Rehabilitation Facility Administration. *Journal of Rehabilitation Administration*. Vol. 5, No. 4, 1981.

McDaniel, R.S., Burdg, N.B., Shinnick, M.D., The Relationship Between Vocational Evaluator Initial Perceptions and Their Recommendation for Adjudicated Youths, *Vocational Evaluation and Work Adjustment Bulletin*. Vol. 14, No. 4, 1981,

Shinnick, M.D., Floyd, M.R., A Reliability Study Using Semantic Differential for Short-Term Workshop Evaluation, *National Association of Rehabilitation Instructors*. Vol. 3, No. 5, June 1980.

Shinnick, M., Carter, J., and Anderson, J., "Directory of Region IV Vocational Rehabilitation Facilities - A Descriptive Analysis" Auburn University, 1979.

Shinnick, M.D., A System for the Evaluation for Short-Term Training for Rehabilitation Facility Personnel, *AURORA*. Vol. 10, No. 1, January 1978.

Shinnick, Michael D., The Follow-up Evaluation of Rehabilitation Facility Short-Term Training, *Vocational Evaluation and Work Adjustment Bulletin*. Vol. II, No. 2, June 1977.

Allen, Conrad M., and Shinnick, Michael D., Placement Through a Job Trial Approach to Vocational Evaluation, *Placement Services and Techniques*, Bowman, J. R. and Graves, W.H. January 1976.

Shinnick, M.D., "The Effects of Time Interval Between Conclusion of Training and Follow-Up," Auburn University, 1976.

Shinnick, Michael D., The Stone Masonry and Tile Setting Work Sample, Work Sample Clearing House, Materials Development Center, University of Wisconsin, January 1974.

Allen, Conrad M., and Shinnick, Michael D., Successful Placement Through a Job Trial Approach to Vocational Evaluation, *Vocational Evaluation and Work Adjustment Bulletin*.

Vol. 7, No. 4, 1973.

## TRAINING/RESOURCE MANUALS

Garratt, Charles and Shinnick, Michael D., TaskMaster 2000 - Applied Work Standards and Ergonomic Work Methods, *Gray Owl Software*, January, 2000, 2002.

Garratt, Charles., Cooper, David., Shinnick, Michael D., "TaskMaster - The Program for Understanding Work, Artifacts Software," Dynamics Research Group, 1990, 92, 95.

Shinnick, Michael D., "MODAPTS Resource and Training Manual," Dynamics Research Group, 1989, 1991.

Sechrist, T., Spitznagal, R., Shinnick, M., "Contract Procurement and Cost Estimating," Auburn University, 1983.

Shinnick, M.D., Spitznagal, R., "Methods Analysis and Work Measurement," Auburn University, 1983.

Shinnick, Michael D., "Production Practices for Human Service Programs," Auburn University, July 1981. Revised 1983.

Wilson, D.L., Shinnick, M.D., Carter, J., "Rehabilitation Facility Administration Practices and Procedures II, Management of the Organization," Auburn University, 1979. Revised by Wilson, D.L., Spitznagal, R., Shinnick, M.D., 1983.

Helm, J.P., Shinnick, M.D., Carter, J., "Program Evaluation for Rehabilitation Facilities," Auburn University, 1979. Revised by Spitznagal, R., Brabham, A., Shinnick, M.D., 1983.

Wilson, D.L., Shinnick, M.D., Carter, J., "Rehabilitation Facility Administration Practices and Procedures I, Personnel Management," Auburn University, 1978. Revised by Wilson, D.L., Shinnick, M.D., Spitznagal, R., 1983.

Shinnick, M.D., Floyd, M.R., "Communication Effectiveness Skills for Rehabilitation Facility Training Grant," 1977. Revised 1980, 1983.

Hoffman, S.J., Shinnick, M.D., Willoughby, M., "Independent Living Resource Manual," Auburn University, March 1980.

Brolin, J., Smith, T., Shinnick, M., "Production Practices in Rehabilitation Facilities," Auburn University, 1979.

McDaniel, R.S., Anderson, J.L., and Shinnick, M.D., "Vocational Evaluation Resource and Training Manual," Auburn University, 1977.

Anderson, J.L., McDaniel, R.S., and Shinnick, M.D.," Adjustment Services Resource and Training Manual" Auburn University, 1977.

## PRESENTATIONS & SEMINARS 96/02

*Ergonomics of Office Equipment, Seating, Furnishings and Work Practices*, Dallas, Texas, January 29-30, 2001, March 4-5, 2002.

*Ergonomics and Work Measurement,* Wabash Magnetics Control Products, Fort Wayne, Indiana, October 12-14, 2000

*MODAPTS, The Language of Work Injury Management,* INARF, Indianapolis, Indiana, September 12-13, and October 11-12, 2000

*Carpal Tunnel Syndrome and Hearing Loss, Epidemiology, Biomechanics, Causation, Prevention and Cost,* Virginia Senate Commerce & Labor Subcommittee, October 16, 1996; House of Delegates Commerce & Labor Subcommittee, October 21, 1996, Richmond, Virginia.

*Management of Work Related Upper Extremity Injuries, An Ergonomic & Rehabilitation Perspective,* August 23, 1996, Calgary, Canada.

*Assessment of Work Related Upper Extremity Risk Factors,* MODAPTS Symposium, March 23, 1996, Cocoa, Florida.

MODAPTS Seminar, *The Language of understanding Work,* Reno, Nevada, March 11-15, 1996

MODAPTS & Ergonomics Seminar: St. Augustine, Florida, January 96; New Orleans, March 97; St. Louis, October 97; Nashville, June 98; St. Louis, June, 1999.

Work Injury & Ergonomics, Ford Motor Company, Louisville, KY, Jan. - April, 1996, Dearborn, MI, February-August 1997, January-March 1998; Kentucky Truck, May - July 1998; Twin Cities, February-March 1999. June 2000, February-March 2001.

Special Health & Safety, Projects, Ford Motor Company, Dearborn, MI, March 1999. "*An Historical Perspective of Ergonomics, Work Injury Management and MODAPTS*" International MODAPTS Association Symposium, Cocoa, Florida, April 16, 1999.

*Ergonomics and Work Injury Management, An interdisciplinary Mandate for the Millennium,* International Symposium, Cocoa, Florida, April 13, 2000.

**OTHER EXPERIENCES, COMPETENCIES, AND ACTIVITIES**
Registered Psychometrist, 1977 to present.
Federal Technical Assistance Consultant - R.S.A, 1977 to present.
Participant, co-leader, and leader of personal growth labs, marathons, and communications conferences, 1970 to 1992.
Captain of a 110' private charter yacht, 1987.
Owner of a 48' sailing vessel, 1985-1987.
Extensive travel in the Caribbean Basin, Central America, 1982 to present.
Licensed Master by the United States Coast Guard for vessels up to 100 tons. 1984 to present.
Participant in the National Trust for Historic Preservation, 1974 -1985.
Completed the Rehabilitation Facility Administration Certificate Program, 1981.
Licensed Effectiveness Trainer, 1977.

Certified Water Safety Instructor and Scuba Diver, 1981 to present.
Conducted restoration of a historic southern antebellum plantation, 1975-1986.

Contributed to undergraduate & graduate education expenses by employment as:

> hotel front desk manager, hardware store clerk, service station attendant, car salesman, life
> guard, recreation director, Fuller Brush salesman, painter, assistant manager of grocery store,
> census taker, bartender, yacht captain, furniture repairer, and carpenter.

BACK TO THE TOP

---

**Dynamics Research Group**
Research Park, Suites 201-203, 670 · Sunshine Farm Lane · Blacksburg VA 24060
Telephone: 540-951-1950 · FAX  540-951-0519 · E-Mail: drg@drshinnick.com

# CURRICULUM VITA

**MARK A. WOODWARD, M.D.**
University of Medicine & Dentistry of New Jersey
School of Osteopathic Medicine
42 East Laurel Road, Suite 1100A
Stratford, New Jersey 08084

**Work: 856-566-6843**
**Home: 856-566-5601**

## PROFESSIONAL TRAINING AND EXPERIENCE

**2001-present**  **Assistant Professor of Neurology**
University of Medicine and Dentistry of New Jersey School of
Osteopathic Medicine, Stratford, NJ

**General Neurology Consultant and Attending Physician**
Kennedy Health System, Southern New Jersey

**2000-2001**  **Neurology, Electromyography, EEG**
Private Practice, Neurologic Group of Bucks/Montgomery County
North Wales, PA

**General Neurology Consultant and Attending Physician**
Doylestown Hospital, Doylestown, PA
Grandview Hospital, Sellersville, PA
North Penn Hospital, North Wales, PA

**1997-2000**  **General Neurology Consultant**
Forensic Unit, St. Francis Medical Center, Trenton, NJ and New Jersey
State Department of Corrections

**1996-2000**  **Neurology, Electromyography, EEG**
Private Practice, Elmer, NJ

**General Neurology Consultant and Attending Physician**
South Jersey Hospital – Elmer Division, Elmer, NJ

**1995-1996**  **Neurology, Electromyography, EEG**
Neuro-Medical Associates, Trenton, NJ

**General Neurology Consultant and Attending Physician**
St. Francis Medical Center, Trenton, NJ

**1994-1995**  **Fellowship in Clinical Neurophysiology (EEG, EMG) and Sleep
Disorders**
Crozer-Chester Medical Center, Upland, PA
Hahnemann University School of Medicine, Philadelphia, PA

**1992-1994**  **Behavioral Neurology Consultant and Attending Physician**
Head Injury Recover Center at Hillcrest, Milford, PA

**MARK A. WOODWARD, M.D.**
Page Two

| | |
|---|---|
| 1990-1992 | **Assistant Professor of Neurology**<br>University of Maryland School of Medicine, Baltimore, MD |
| | **Attending Physician**<br>Neurorehabilitation Unit, Kernan Hospital, Baltimore, MD |
| 1989-1990 | **Behavior Neurology Consultant and Attending Physician**<br>New Medico Head Injury Center at Lewis Bay, Hyannis, MA and Forest Manor Neurological Rehabilitation Center, Middleboro, MA |
| 1988-1989 | **Fellowship in Behavioral Neurology**<br>Boston/Bedford VA Medical Centers and Boston University School of Medicine, Boston, MA |
| 1987-1989 | **Medical Officer; Consultant in Neurology (1988-89)**<br>Medfield State Psychiatric Hospital, Medfield, MA |
| 1985-1988 | **Resident in Neurology**<br>Affiliated Hospital Training Program in Neurology<br>Boston University School of Medicine, Boston, MA |
| 1984-1985 | **Medical Internship**<br>Crozer-Chester Medical Center, Upland, PA<br>Diplomate, National Board of Medical Examiners. (July 1985) |

## EDUCATION AND HONORS

| | |
|---|---|
| 1988-1989 | **Boston University Graduate School, Boston, MA**<br>Courses in neuropsychological assessment in partial fulfillment of PhA.<br>Requirements in Behavioral Neurosciences |
| 1980-1984 | **Hahnemann University School of Medicine, Philadelphia, PA**<br>Doctor of Medicine, (June 1984)<br>Certificate of Distinction in Neurology<br>Certificate of Honor in Neuroanatomy and Neurosurgery |
| 1975-1980 | **Temple University, Philadelphia, PA**<br>B.A. in Biology, (August 1980)<br>Magna Cum Laude<br>Phi Beta Kappa<br>Graduate courses in neurobiology, neurobiological research techniques (intracellular recording), and electron microscopy. |

*Board Certified in Neurology by the American Board of Psychiatry and Neurology, Inc., with added qualifications in Clinical Neurophysiology.*

*Board Eligible in Sleep Medicine*

**MARK A. WOODWARD, M.D.**
Page Three

## MILITARY EXPERIENCE

1971-1975        **Active Duty, United States Marine Corps**
**Aviation Ordinance Technician**
**Highest Rank, Sergeant (E-5)**
**Honorable Discharge 1977**

## CURRENT LICENSURE

1991-Present          Pennsylvania State Medical License

1995-Present          New Jersey State Medical License

1999-Present          Delaware State Medical License

## PROFESSIONAL ASSOCIATIONS

American Medical Association

New Jersey Medical Association

Mercer County Medical Association

American Clinical Neurophysiology Society

American Sleep Disorders Association

American Association of Electrodiagnostic Medicine

American College of Occupational and Environmental Medicine

American Society of Neurorehabilitation

Revised: 3/3/2001

# EXHIBIT "H"

FILE COPY

# FLYNN & ASSOCIATES, P.C.

### ATTORNEYS AT LAW

MICHAEL B. FLYNN*
RICHARD A. DAVIDSON, JR.
LORI A. WIRKUS⁺
JOHN E. YOUNG, IV
VALERIE A. MURPHY

*also admitted in NY
⁺also admitted in CT

OF COUNSEL:
DURKIN, MCDONNELL,
CLIFTON & O'DONNELL

400 CROWN COLONY DRIVE
SUITE 200
QUINCY, MASSACHUSETTS 02169
TELEPHONE (617)773-5500
FACSIMILE (617)773-5510
E-MAIL: flynnlaw@flynnassoc.com
WEBSITE: www.flynnassoc.com

BOSTON OFFICE:
160 STATE STREET
EIGHTH FLOOR
BOSTON, MA 02109

DETROIT OFFICE:
PENOBSCOT BUILDING
645 GRISWOLD STREET, SUITE 3253
DETROIT, MI 48226
TEL: (313)963-3033
FAX: (313)963-3011

August 1, 2006

*Via Facsimile Transmission (856-914-0429)*
*& U.S. Mail*
Thomas J. Joyce, III, Esq.
The Law Office of Thomas J. Joyce, III
900 Centerton Road
Mount Laurel, NJ 08054-1630

RE:    Crowther vs. Consolidated Rail Corporation, et al.
       <u>U.S.D.C., Dist. of Mass. (Springfield), C.A. Docket No. 05-30140-MAP</u>

Dear Tom:

Please be advised that I am in receipt of the *Plaintiff's Expert Witness Disclosures* dated July 26, 2006, which appears to be deficient pursuant to Fed.R.Civ.P. Rule 26(a)(2). Specifically, Rule 26(a)(2) requires that the disclosures "be accompanied by a written report prepared and signed by the witness." Moreover, Rule 26(a)(2) requires that:

> [T]he report shall contain a complete statement of all of the opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding 10 years; the compensation to be paid for the study and testimony; and a listing of any other case in which the witness has testified as an expert at trial or by deposition within the preceding four years.

The only documents which were produced along with the disclosures were the CV's of Dr. Woodward and Michael Shinnick. No other documents were produced.

Kindly produce your experts' reports, along with the additional information which is required by Rule 26(a)(2) by the deadline for the plaintiff's disclosures, namely August 2, 2006.

Thomas J. Joyce, III, Esq.
Page 2
August 1, 2006

Also, please note that we have not received any medical records in connection with the treatment the plaintiff received by Dr. Baustin or Dr. Wenner in connection with this case, despite repeated requests, which will need prior to the deposition of Mr. Crowther.

As you know, the deadline for the completion of non-expert discovery is September 1, 2006, and the court has indicated that it will grant no further deadlines. Therefore, immediate attention to these matters would be greatly appreciated.

Sincerely,

Lori A. Wirkus

cc:    Michael J. McDevitt, Esq. (via U.S. Mail)

G:\F & A\CASE FILES\CSX OCCUPATIONAL\CARPAL TUNNEL\CROWTHER\correspondence\attorney\Joyce re.expert reports.8.1.06.doc

# EXHIBIT "I"

THE LAW OFFICE
OF
*THOMAS J. JOYCE, III*

900 CENTERTON ROAD
MOUNT LAUREL, NEW JERSEY 08054-1630
(856) 914-0220  -  (800) 995-FELA  -  (856) 914-0429 (FAX)



August 1, 2006

VIA FACSIMILE

Lori A. Wirkus, Esquire
FLYNN & ASSOCIATES
400 Crown Colony Dr, Suite 200
Quincy, MA  02169

RE:   Geoffrey Crowther v. Consolidated Rail Corporation, et al
      Civil Docket No: 3:05-cv-30140-MAP

Dear Ms. Wirkus:

Enclosed please find Plaintiff's Notice of Site Inspection in Geoffrey Crowther's FELA personal injury actions.

Kindly contact me at your earliest convenience to make arrangements for Dr. Michael Shinnick to perform a formal site inspection at the West Springfield train yard in West Springfield, Massachusetts.

If you have any questions please do not hesitate to contact me. Thank you.

Very truly yours,

THOMAS J. JOYCE, III

TJJ:ada
Enc.

cc:   Dr. Michael Shinnick

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GEOFFREY CROWTHER,

Plaintiff,

vs.                                              Civil Action No.: 05-30140-MAP

CONSOLIDATED RAIL CORPORATION
and CSX TRANSPORTATION, INC,

Defendants,

### PLAINTIFF'S NOTICE OF SITE INSPECTION

TO:   Lori A. Wirkus, Esquire
      FLYNN & ASSOCIATES
      400 Crown Colony Dr, Suite 200
      Quincy, MA  02169

DATE:  August 1, 2006

Pursuant to Federal Rule of Civil Procedure 34, you are hereby noticed to permit Plaintiffs, or party acting on behalf of requesters, entry upon land to conduct a work task inspection and analysis of the primary and secondary tools and equipment used by Plaintiff for the purposes of discovery. Requesters are permitted to inspect, observe, test or sample designated tangible items and/or activities.    These items, and or demonstrative activities, will be examined, measured, photographed and videotaped; reports and photos/videotape will be processed and reproduced at Plaintiff's expense.  Said inspection should be accomplished in one day, if tasks and tools can be demonstrated and measured from a central location.

By:
THOMAS J. JOYCE, III, ESQUIRE
Attorney for Plaintiff

Dated:   August 1, 2006